Argued March 31, affirmed May 4, petition for rehearing denied May 25, petition for review denied September 26, 1972

STATE OF OREGON, *Respondent, v.* THERELL TYRONE DAVIS (No. 40298), *Appellant,* and STATE OF OREGON, *Respondent, v.* TONY CORNELIUS TRAVIS (No. 40299), *Appellant.*

496 P2d 923

414

*Ken C. Hadley,* Deputy Public Defender, Salem, argued the cause for appellants. With him on the brief was Gary D. Babcock, Public Defender, Salem.

*John H. Clough,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and John W. Osburn, Solicitor General, Salem.

Before SCHWAB,* Chief Judge, and LANGTRY and THORNTON, Judges.

LANGTRY, J.

Defendants in this consolidated appeal were jointly tried and convicted, in a trial to the court, for illegal possession of heroin. Former ORS 475.100. Their assignments of error are: (1) their motion to suppress should have been granted; (2) the court erred in permitting evidence of other crimes; and (3) there was insufficient evidence that they possessed the heroin.

## Motion to Suppress

The heroin which defendants were charged with

---

* Schwab, C. J., did not participate in this decision.

possessing was seized by a probation officer from the apartment of one Gary Cox, a probationer under his supervision. The probation officer, Nicholas Nathe, testified that about 2:15 p.m. on October 4, Farrer, a parolee, informed him that he had just come from Cox's apartment where defendants and a Mike Howard were cutting up heroin. Nathe contacted the police and explained that he had information there were weapons on the premises and he needed assistance in determining whether Cox was in violation of his probation.

Nathe and two plain clothes police officers drove to Cox's apartment. As they arrived a person identified as Cramer entered the apartment. Nathe knocked on the door and asked Cramer, who answered the door, to summon Cox. At the door Nathe told Cox he had information that narcotics were on the premises and wanted "to have a look around," pointing out that under the terms of his probation "it was within my prerogative to look around the place."① Cox responded: "Okay, come in. * * * Where do you want to start

---

① In answering defendants' contention that the search by Nathe was unreasonable, the state argues Cox consented. We do not reach this issue. However, we note that contrary to Nathe's statement to Cox, nothing in the court's probation conditions or those of the Board of Parole and Probation contain a provision for visitation. Such a condition is suggested by ORS 137.540, which provides:

"The court shall determine, and may at any time modify, the conditions of probation, which *may include* as well as any others, that the probationer shall:

"(1) Avoid injurious or vicious habits.

"(2) Avoid places or persons of disreputable or harmful character.

"(3) Report to the probation officer as directed by the court or probation officer.

"(4) *Permit the probation officer to visit him at his place of abode or elsewhere.*

first." Nathe testified that after he entered Cox said he didn't mind his searching but preferred they get a search warrant before removing anything.

While Cox remained in the living room Nathe proceeded to Cox's rear bedroom where he found a .22 caliber pistol, a hunting rifle, and an "old vintage" shotgun. Further investigation revealed marihuana and a quantity of capsules later identified as seconal.

Nathe then proceeded to the kitchen where he observed on a table a quantity of loose heroin, several folded packets of heroin, a number of balloons, and a funnel. He turned the material over to the police officers. Defendants, who had emerged from the kitchen area when Nathe and the police first arrived, and Cox were then arrested.

Defendants contend that this warrantless search and seizure violated the Fourth Amendment. Defendants' and the state's arguments assume, and we hold, that the reasonableness of this search and seizure as to defendants is necessarily determined by the rights of Cox, a probationer.

We find no Oregon cases in point,[2] but cases in other jurisdictions have dealt specifically with the application of the Fourth Amendment in the probation or parole context.

---

"(5) Answer all reasonable inquiries of the probation officer.

"(6) Work faithfully at suitable employment.

"(7) Remain within a specified area.

"* * * * *." (Emphasis supplied.)

[2] ORS 137.240 provides that conviction of a felony suspends all the civil and political rights of the convicted person.

"* * * * *

"(2) However, a person convicted of a felony may lawfully

(Continued on page 417)

██ Generally, one released on probation after conviction of a crime is entitled to the constitutional protection against unreasonable searches and seizures. *Martin v. United States,* 183 F2d 436 (4th Cir) *cert denied* 340 US 904, 71 S Ct 280, 95 L Ed 654 (1950); *United States v. Hill,* 447 F2d 817 (7th Cir 1971); *U. S. ex rel. Lombardino v. Heyd,* 318 F Supp 648 (ED La 1970); *see* ORS 137.240 (2). But his status as a probationer is a factor to be considered in determining whether a search and seizure by a probation officer is unreasonable. *Martin v. United States,* supra; *see In Re Martinez,* 1 Cal 3d 641, 83 Cal Rptr 382, 463 P2d 734, *cert denied* 400 US 851, 91 S Ct 71, 27 L Ed 2d 88 (1970); *cf. Camara v. Municipal Court,* 387 US 523, 87 S Ct 1727, 18 L Ed 2d 930 (1967).

> "Searches by parole officers pursuant to their duties, just as other administrative searches * * * [citing cases] are subject to the broad reasonableness requirement of the Fourth Amendment. * * * The conditional nature of a parolee's freedom may result in some diminution of his reasonable expectation of privacy and thus may render some intrusions by parole officers 'reasonable' even when the information relied on by the parole officers does not reach the traditional level of 'probable cause.' A diminution of Fourth Amendment protection, however, can be justified only to the extent actually necessitated by the legitimate demands of the operation of the parole process * * *." *In Re Martinez,* 1 Cal 3d at 647, n 6.

██ For purposes of our analysis we see no reason

---

exercise all civil rights during any period of parole or probation or upon final discharge from imprisonment."

Further provisions of that chapter indicate that in relation to his (or her) probation officer a probationer incurs some diminution of rights. See, for example, ORS 137.540, 137.550 (2), 137.630.

to distinguish the rights of probationers and parolees. See ORS 137.240 (2). From *Martinez* and other related cases we are able to derive two principles:

(A). A search by a parole or probation officer need not satisfy completely the usual test of "probable cause"; (B). The search must have been actuated by the legitimate operation of the probation supervision process. *See People v. Gilkey,* 6 Cal App 3d 183, 85 Cal Rptr 642, 645 (1970), *cert denied* 401 US 924, 91 S Ct 887, 27 L Ed 2d 827 (1971).

■ Defendants apparently do not dispute that Nathe had sufficient cause to believe Cox was in violation of his probation so as to render a search to verify the narcotics information "reasonable." We hold he had sufficient cause.

■ Defendants argue the search exceeded the needs of a probation inspection because it continued after Nathe had sufficient evidence that Cox had violated his probation. That Nathe had a basis for probation revocation from the handgun and narcotics which he found in the rear bedroom did not compel termination of the investigation. Logically, he may have properly wished to verify the heroin report which prompted the investigation. Moreover, the decision of a court to revoke probation may demand more than one violation of probation and, after revocation, a parole board may consider the violations and independent crimes he uncovered in its decision to parole. Continuation of the investigation in the kitchen was reasonable.

■ Since, therefore, Nathe had a right to be where he was, seizure of the heroin in plain view on the kitchen table was valid. *State v. McGee,* 7 Or App 574, 492 P2d 489 (1971); *State v. Cate,* 7 Or App 509, 491

P2d 627 (1971), Sup Ct *review denied* (1972). The trial court properly denied the motion to suppress.

■ Over objection of defense counsel Cox testified that the week prior to October 4 defendants were in his apartment and he observed Travis give Davis a balloon, from which Davis poured heroin onto a matchbook cover and "snorted" it, a street expression for sniffed; and at this time Travis offered to sell him some of the heroin.

The state urges the theory that these acts were part of an overall scheme for sale of heroin and thus probative of the charge of possession of heroin on October 4. There was substantial evidence of drug traffic at the apartment but it mainly implicated Cox and Howard. It is difficult to infer any connection between the possession and use of heroin a week prior to the 4th and possession on the 4th with which defendants were charged. That Travis offered to sell some heroin might have some relationship to the circumstances of the alleged possession on the 4th, in which there was an apparent preparation for sale of heroin, but under the facts in evidence it had none. To say it did would distort the "common scheme or plan" exception to the general prohibition against evidence of other crimes. *State of Oregon v. Long,* 195 Or 81, 244 P2d 1033 (1952).

The state relies on *State v. Lehmann,* 6 Or App 600, 488 P2d 1383 (1971), and attempts to distinguish our holding in *State v. Bowen,* 7 Or App 629, 492 P2d 480 (1972). Neither case helps the state's position. In each of those cases there was no issue as to whether defendant knew what he possessed was illegal. We held it error to admit evidence of other crimes which was probative only of such knowledge.

■ In the same way in the case at bar, knowledge that the white powder found on the kitchen table was heroin was not a contested issue. Defendants simply deny that they ever had it in their possession. It was error for the court to admit the evidence of the previous possession, use and attempted sale, but it was not prejudicial.

■ The case was tried to the court which, in denying defendants' motion for directed verdict and judgment of acquittal, specified the evidence upon which it relied; this evidence did not include Cox's testimony of defendants' prior criminal conduct. When the state first attempted to elicit this testimony, over objection of defense counsel, and represented to the court that the evidence would evince a "common scheme or plan," the court responded:

"Very well, if you can show that, you may proceed."

After the evidence came in and, as we have concluded above, failed to satisfy the "common scheme or plan" exception, defense counsel did not renew its objection, which would have afforded the court an opportunity to make a more informed ruling on its admissibility. We presume, nevertheless, that the court disregarded this testimony.

"* * * In the absence of prejudice appearing in the record * * * the presumption is that the trial judge is not prejudiced by irrelevant information that has come to his attention * * *." *State v. Voshell*, 247 Or 534, 537, 430 P2d 1010 (1967).

As we noted in *Hurt v. Cupp*, 5 Or App 89, 482 P2d 759 (1971), it is relatively common for the trial judge sitting as trier of fact to hear or see inadmissible evidence, but in the absence of evidence to the contrary,

we presume the judge, in the course of performing his official duty, will not consider that evidence, if inadmissible, when making his decision. *See, also, State v. Cafarell*, 254 Or 73, 456 P2d 999 (1969). Here, where the court specified the facts upon which it based its verdict, and these did not include the testimony of defendants' prior criminal conduct, we conclude defendants were not prejudiced by this irrelevant evidence.

Defendants contend the court erred in denying their motion for judgment of acquittal and in finding them guilty. They actually challenge the sufficiency of the evidence to sustain the conviction and, therefore, we review the record as a whole to determine whether there is sufficient evidence to support the verdict. *State v. Nix*, 7 Or App 383, 491 P2d 635 (1971). We view the evidence in the light most favorable to the state. *State v. Redeman*, 9 Or App 329, 496 P2d 230 (1972).

This assignment turns on whether defendants had constructive possession of the heroin. In *State v. Oare*, 249 Or 597, 439 P2d 885 (1968), it was held that evidence of control or right to control is necessary to constructive possession.

Defendants argue it is sheer speculation that they exercised control over the heroin when three other persons, including the two tenants (Cox and Howard), were in the apartment at the same time. Direct and circumstantial evidence belie this assertion.

Nathe and one of the police officers testified that when Cramer opened the door they observed Cox coming down the hall from his rear bedroom, but that defendants, who were behind him, were coming out of the kitchen. A diagram in evidence shows that the hall

opens to the kitchen at its far end, then to the bathroom, and, a number of feet toward the front of the apartment, to Cox's bedroom.

Cox testified that when he arrived at his apartment on October 4, about 3:40 p.m., defendants were wrapping heroin at the kitchen table. In their brief defendants contend that the court completely disregarded this testimony in reaching its verdict because Cox had been impeached in cross-examination on other matters. We disagree. After all of the evidence was in, the court stated:

> "* * * I am certainly not basing my decision upon the fact of whether or not Mr. Cox is telling the truth, because I think he has alot [sic] of difficulty in telling the truth * * *."

However, at the end of the state's case-in-chief, when defendants moved for acquittal, the court said:

> "I would have been inclined to agree with you if it hadn't been for the testimony by this last witness [Cox] that the defendants were wrapping little pieces of paper there at the kitchen table. I think that is at least enough to show some dominion and control."

The matters upon which Cox was impeached (coming mostly after the denial of the motion for acquittal) concerned mainly his dealings in narcotics and not his account of defendants' actions when he entered the apartment. Moreover, other evidence and testimony corroborated his account.

Farrer testified that about 2 p.m. that afternoon he observed defendant Travis and Howard sitting at the kitchen table, on which there was heroin; and that defendant Davis was walking around the kitchen

and living room area. (At the suppression hearing Nathe testified Farrer told him that the three were cutting up heroin.)

The materials found on the kitchen table indicated heroin was being wrapped. From the photographs in evidence it appeared that two or three persons had been sitting at the table: on one end of the table were two opened beer cans, a glass, two ashtrays containing cigarette butts, and three packages of cigarettes, two of the same brand; three chairs were positioned at this end of the table. The court specifically noted these pictures as influencing its verdict.

Materials found under the table and in a nearby garbage bag evidenced an attempt to conceal some of the narcotics, thus indicating a close proximity in time between the narcotics activity, and the entry of Nathe and the police officers and their observation of defendants coming from the kitchen.

The evidence pointing to defendants is strengthened by the fact that Cramer had just arrived at the apartment and was not implicated by Farrer in the activities earlier that afternoon; that Howard was in the shower at the time; and that Cox had arrived only twenty minutes before, was seen coming from his bedroom, and also had not been identified by Farrer as participating in the narcotics activities earlier that afternoon.

█ From all of this evidence it was reasonable for the court to conclude defendants had been in the kitchen where they exercised control over the heroin at the table.

Affirmed.