Argued December 21, 1976, affirmed May 9, 1977

# STATE OF OREGON, *Appellant,*
*v.*
# WALTER EDWARD CULBERTSON, JR.,
*Respondent.*
## (Nos. 96575 and 96576, CA 6771 and 6772)
### (Cases consolidated)

563 P2d 1224

Donald L. Paillette, Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

John Henry Hingson, III, Oregon City, argued the cause and filed the brief for respondent.

Before Schwab, Chief Judge, and Tanzer and Richardson, Judges.

TANZER, J.

**TANZER, J.**

This is a consolidated appeal by the state from orders suppressing evidence in two criminal cases arising from the same facts. The home of defendant, a probationer, was searched in his absence, without a warrant, by his probation officer and a deputy sheriff. Observations made during that search were set forth in an affidavit in support of a search warrant, the fruits of which were suppressed. If the initial search was unlawful, then the second search cannot stand. *Wong Sun v. United States,* 371 US 471, 83 S Ct 407, 9 L Ed 2d 441 (1963). The issue then is whether the initial warrantless search by the probation officer was lawful.

Defendant was placed on three years probation in April, 1973. On about January 20, 1976, his probation officer, Mr. Heesch, received information from a police officer that defendant had about 50 pounds of marihuana in his house. Heesch testified it was his impression the police could not obtain a warrant because either the informant or the information was not sufficiently reliable.

On February 11, 1976, Heesch, accompanied by a deputy sheriff, went to defendant's residence. When no one answered their knocking they called out and then opened the unlocked door and entered. No one was present in the residence. Their cursory search disclosed remnants of marihuana cigarettes in the living room and a baggie of marihuana in the kitchen.

An affidavit of the deputy sheriff in support of a search warrant recited the observations made during the first search and the evidence found. Upon execution of the search warrant, law enforcement officers found additional marihuana and some peyote in defendant's house.

There was a probation revocation hearing at which the court heard testimony and suppressed the evidence arising from the search of defendant's home. The

parties stipulated in the cases at bar that the same judge could consider the evidence adduced earlier at the probation hearing and the orders of suppression are based thereon.

### 1. The Record on Appeal

First defendant asserts that we may not consider the assignment of error because the transcript is incomplete and the state, as appellant, has the responsibility for its completeness. *State v. Burns/Sundquist,* 15 Or App 590, 516 P2d 479 (1973).

The probation revocation hearing commenced on a date not disclosed in the record and was continued to May 18, 1976. The state designated for the record on appeal a transcript only of the proceedings on May 18, 1976, and the hearing on the motion to suppress evidence in the cases at bar. The transcript of the May 18 hearing begins with cross-examination by defendant of Mr. Heesch. Obviously Mr. Heesch had testified during the previous proceedings.

The resolution of this assertion requires an examination of the respective responsibilities of appellant and respondent for completeness of the record. ORS 19.029(1)(d) and (e)[1] require that appellant designate in the notice of appeal points on appeal and the portion of the record upon which he relies. If the respondent

---

[1]ORS 19.029(1)(d) and (e) provide:

"(1) The notice of appeal shall contain the following:

"* * * * *

"(d) A designation of those portions of the proceedings and exhibits to be included in the record in addition to the trial court file. The designation may not be later amended by the appellant unless the appellate court so orders.

"(e) A plain and concise statement of the points on which the appellant intends to rely. On appeal, the appellant may rely on no other points than those set forth in such statement. If the appellant has designated for inclusion in the record all the testimony and all the instructions given and requested, no statement of points is necessary. Not later than the 15th day following the filing of the transcript, the appellant may serve and file an amended statement of points. Except by approval of the court, the appellant may then rely on no other points than those set forth in such amended statement."

determines that the record as designated by the appellant is inadequate for the resolution of the points on appeal set out in the notice of appeal, then ORS 19.029(2)[2] gives to respondent the responsibility and authority to designate additional portions of the record as respondent deems necessary. Only if the appellant does not designate points on appeal in the notice of appeal is appellant required to designate the entire record. In this case, appellant designates the record at appellant's hazard. *State v. Burns/Sundquist, supra.*

■ In each of these cases, appellant designated as its sole point on appeal that "the trial court erred in allowing defendant's motion to suppress evidence." Under ORS 19.029(2) defendant, as respondent, had the opportunity of and responsibility for designating any additional portions of the record which he felt might be helpful for the resolution of that point. His failure to do so is, in effect, a stipulation that the portion of the record designated by appellant is sufficient for disposition of appellant's point on appeal. Not having supplemented the record prior to the settlement of the transcript, defendant cannot be heard to complain for the first time in his responding brief that appellant's designation of record was insufficient. Therefore, we proceed to the merits.

### 2. The Validity of the Search

We have hitherto held in *State v. Davis/Travis,* 9 Or App 412, 496 P2d 923, *rev den* (1972), that the Fourth Amendment relationship of probationer and probation officer is controlled by these two principles:

> "(A). A search by a parole or probation officer need not satisfy completely the usual test of 'probable cause'; (B). The search must have been actuated by the legitimate operation of the probation supervision process. * * *"

[2] ORS 19.029(2) provides:

"Within 10 days after the filing of the notice of appeal any other party may serve and file a designation of additional parts of the proceedings and exhibits to be included in the record. If such party also appeals the designation shall be included in his notice of appeal."

[ 367 ]

Defendant contends that the dual standards of *Davis/Travis* are incorrect and should be reconsidered.

The first standard, that intrusions upon the probationer's privacy can be made upon some cause less than probable cause, is insufficiently precise to provide guidance for executive action or judicial application. Probation officers may have legitimate need to intrude upon a probationer's privacy due to information of unestablished reliability, experience in similar cases, or the desire for spot checks. The concept of probable cause does not work well in the context of probation. The concept of diluted probable cause works even less well and is no standard at all.

That leaves the second *Davis/Travis* standard, whether the search is within the legitimate purposes of probation, to be considered standing alone.

There is little law, even when augmented by analogous parole cases, and no unanimity about the civil liberties relationship of probation officer and probationer. The remaining rule of *Davis/Travis* that a probation officer may invade the privacy of the probationer in any way if it is for probation-related purposes has support in the much cited parole case of *Latta v. Fitzharris,* 521 F2d 246 (9th Cir), *cert den* 423 US 997 (1975), which divided the United States Court of Appeals three ways. At the other end of the spectrum is the idea that probationers and parolees retain their Fourth Amendment rights without restriction, *State v. Cullison,* 173 NW2d 533, 536 (Iowa 1970); *see* Note, *Fourth Amendment Limitations on Probation and Parole Supervision,* 1976 Duke L J 71, 94. Neither extreme is satisfactory.

The first, as in *Davis/Travis,* is so broad as to make just application impossible. Since any act by the probation officer short of outright harassment could be justified under such a broad standard, the probation officer would have absolute powers, the probationer would be absolutely denuded of his constitutional protections and, contrary to the intent of the Fourth

Amendment, the decision to search would be completely executive rather than judicial. Therefore, both struts of the *Davis/Travis* doctrine are abandoned and its reasoning is overruled.

The other extreme, however, that Fourth Amendment rights are unaffected by probation, ignores the legitimate needs of the supervisory aspect of probation. A probation officer and probationer stand in a more intricate relationship than do policeman and citizen, and different rules of privacy are reasonable to control each different relationship. We look to the probation officer both as a guidance counselor for his probationer and as a surrogate jailer who must protect the public from a person convicted of crime but allowed conditional liberty. If the probation officer is to perform both functions effectively, his authority to act must be defined more liberally than that of a police officer. The result of a rule restricting a probation officer's supervisory authority to that of a policeman and giving a probationer the same protection of privacy as any other citizen, would be to render probation a less effective penal remedy.

There is a middle way which better satisfies all interests and it begins with basic concepts. The analysis must first determine the extent and nature of the probationer's right under the Fourth Amendment to be free from unreasonable searches and seizures.

The general pattern of Oregon law is that a probationer is a free person possessed of all civil rights except those which are taken away from him for probationary purposes. Probation is a process of imposition of rehabilitative and protective conditions upon a convict in lieu of taking away his liberty by incarceration. This scheme is consistent with recognition by the United States Supreme Court that prisoners, even while incarcerated, retain those constitutional rights that are not inconsistent with legitimate penological objectives. *Pell v. Procunier,* 417 US 817, 94 S Ct 2800,

41 L Ed 2d 495 (1974); *Cruz v. Beto,* 405 US 319, 92 S Ct 1079, 31 L Ed 2d 263 (1972).

ORS 137.275[3] provides that a convict does not lose any of his civil liberties solely by virtue of conviction. Upon conviction, however, ORS 137.540[4] gives to the court responsibility and authority to restrict or take away a probationer's liberties by imposing conditions of probation. We are directed to no statutorily required conditions. Rather the generality of ORS 137.540 indicates an intention to grant to the court the broadest possible power to formulate appropriate conditions in each case. Subsection (12) allows the court to delegate to the Corrections Division the authority to

---

[3] ORS 137.275 provides:

"Except as otherwise provided by law, a person convicted of a felony does not suffer civil death or disability, or sustain loss of civil rights or forfeiture of estate or property, but retains all of his rights, political, civil and otherwise, including, but not limited to, the right to vote, to hold, receive and transfer property, to enter into contracts, including contracts of marriage, and to maintain and defend civil actions, suits or proceedings."

[4] ORS 137.540 provides:

"The court shall determine, and may at any time modify, the conditions of probation, which may include, as well as any others, that the probationer shall:

"(1) Avoid injurious or vicious habits.

"(2) Avoid places or persons of disreputable or harmful character.

"(3) Report to the probation officer as directed by the court or probation officer.

"(4) Permit the probation officer to visit him at his place of abode or elsewhere.

"(5) Answer all reasonable inquiries of the probation officer.

"(6) Work faithfully at suitable employment.

"(7) Remain within a specified area.

"(8) Pay his fine, if any, in one or several sums.

"(9) Be confined to the county jail for a period not to exceed one year or one-half of the maximum period of confinement that could be imposed for the offense for which the defendant is convicted, whichever is the lesser.

"(10) Make reparation or restitution to the aggrieved party for the damage or loss caused by offense, in an amount to be determined by the court.

"(11) Support his dependents.

"(12) Remain under the supervision and control of the Corrections Division."

impose probationary conditions by which it may exercise "supervision and control." ORS 137.630(1) and (4)[5] provide that the probation officer must inform the probationer of the conditions of probation and, in the exercise of supervision and control, the officer is authorized to make such requirements and issue such orders as are suitable for the purposes of supervision and reformation.

We have hitherto reviewed probationary conditions to determine whether they are within or without the trial court's "discretion," *State v. Allen,* 12 Or App 455, 506 P2d 528, *rev den* (1973). Although that discretion is extremely broad, it is not shapeless. It is bounded by the purposes of the laws of probation. In the similar context of the Federal Probation Act, it has been held that any condition of probation, to be valid and enforceable, must bear "a reasonable relationship to the treatment of the offender and the protection of the public," *Porth v. Templar,* 453 F2d 330 (10th Cir 1971).[6] ORS 137.540 and 137.630(4) are sufficiently broad to allow any conditions or restrictions of civil liberties which relate to those two objectives. Thus, read together, ORS 137.275, 137.540 and 137.630(4) establish that a probationer retains all civil liberties except those which are taken away as conditions of

---

[5] ORS 137.630 provides in pertinent part:

"The duties of probation officers shall be:

"(1) To make such investigations and reports under ORS 137.530 as are required by the judge of any court having jurisdiction within the county, city or judicial district for which the officer is appointed to serve.

"* * * * *

"(4) To give each person under their supervision a statement of the conditions of probation and to instruct him regarding them; to keep informed concerning the conduct and condition of such persons by visiting, requiring reports and otherwise; to use all suitable methods, not inconsistent with the condition of probation, to aid and encourage such persons and to effect improvement in their conduct and condition.

"* * * * *"

[6] *Cf., In re Bushman,* 1 Cal 3d 767, 83 Cal Rptr 375, 463 P2d 727, 732-733 (1970), which began a line of cases that may be overly restrictive. *See also People v. Lent,* 15 Cal 3d 481, 124 Cal Rptr 905, 541 P2d 545, 548, n. 1 (1975).

[ 371 ]

probation and that the standard against which the validity of conditions imposed by the court or the probation officer is to be measured is whether they bear a reasonable relationship to the reformation of the offender or the protection of the public.[7]

■ It is reasonable to expect that a court may, for the probationary purposes of prevention of recidivism and of supervision for public safety, require as a specific condition of probation that a probationer consent to warrantless searches by his probation officer, *United States v. Consuelo-Gonzalez,* 521 F2d 259, 262 (9th Cir 1975), or to waive his right to refrain from self-incrimination, *cf. State v. Wilson,* 17 Or App 375, 521 P2d 1317, *rev den* (1974), *cert den* 420 US 910 (1975). Similarly, a probation officer's demand to search made in reasonable pursuance of probationary objectives under ORS 137.630(4) must be obeyed at the hazard of revocation. Demands for search of person (e.g., urinalysis) or premises might reasonably be based on minimal information or even spot checking as dictated by experience. A convict may avoid such conditions by refusing probation, but, once he has accepted probation he is bound by its lawful conditions. *State v. Wilson, supra.*

■ Here, the defendant was placed on probation for three years under the control and supervision of the Corrections Division "subject to their standard rules and regulations,"[8] on the condition that he spend 60 days in the county jail. The judgment order does not

---

[7] The rights of probationers and parolees may be generally the same. Such a conclusion would be symmetrical in that ORS 137.280(2) restores civil rights to parolees, ORS 144.270 provides that the Board of Parole may set conditions of parole, and the United States Supreme Court in *Morrissey v. Brewer,* 408 US 471, 482, 92 S Ct 2593, 33 L Ed 2d 484 (1972), spoke of parolees living independently "subject to the conditions of * * * parole," but there is also some logical reason for distinction. The primary difference is that a parolee is being conditionally restored to certain of his freedoms which have already been judicially taken from him by a sentence of imprisonment. Since this case involves the rights of a probationer, we need not and do not circumscribe the rights of parolees.

[8] We are not directed to probationary rules and they are not published as administrative rules.

impose any special requirements which affect defendant's expectation of privacy of his home. Nor does the record disclose any requirements or orders of the probation officer pursuant to ORS 137.630(4) which reflect on privacy and we cannot assume that any such restriction of privacy exists. Therefore, the entry into the defendant's home was not authorized by the conditions of probation. Similarly, the unwarranted entry was not based upon information constituting probable cause, so it is not authorized by the Fourth Amendment. Since the search and seizure is without probable cause, and since the record reflects no condition of probation which diminishes the reasonableness of defendant's expectation of privacy, the fruits of the search are inadmissable and the orders of suppression were properly entered.

■ Defendant also complains that the probation officer was a "stalking horse" for the police. Despite the colorfully negative language, there is nothing wrong with probation office cooperation with police. Information which does not establish probable cause, e.g., information from an untested informant that the probationer is engaged in criminal activity, may warrant investigation by a probation officer. We see no evil in the sharing of legitimately acquired information by probation officers and police. In fact, prudence may require such mutual assistance. Defendant calls this a new "silver platter doctrine," but, unlike this case, that doctrine arose from the sharing of unconstitutionally obtained information, *Elkins v. United States,* 364 US 206, 80 S Ct 1437, 4 L Ed 2d 1669 (1960). There is no taint from the cooperation in this case and we would not regard cooperation as a valid reason for suppression.

Affirmed.