Argued and submitted October 10, resubmitted
in banc July 17, reversed and remanded July 21, 1980,
reconsideration denied (50 Or App 595, 623 P2d 1076)
February 18, 1981

# STATE OF OREGON,
*Respondent,*

v.

# JAMES TYRONE STEPHENS,
*Appellant.*

## (No. C 78-07-11349, CA 14286)

614 P1d 1180

Herbert C. Sundby, Portland, argued the cause and filed the briefs for appellant.

Scott McAlister, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were James A. Redden, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

GILLETTE, J.

**GILLETTE, J.**

Defendant, who was on probation for the offense of assault in the second degree, appeals the trial court's revocation of that probation. Defendant maintains that the evidence which served as the basis for the revocation and which was obtained during a search of defendant's house by his probation officer was obtained as the result of an unlawful search and seizure. We agree, and reverse.

The Judgment and Probation Order in this case placed defendant on probation to the Corrections Division. One condition was that defendant "abide by all the rules and regulations of said Corrections Division, and not again violate any laws."[1] Thereupon, at the behest of the Corrections Division, defendant signed a form captioned "Conditions of Supervision." One of the provisions was: "I have been informed and I understand that my Probation Officer has, with reasonable grounds, the right to search my person, residence, vehicle and property at any time of the day or night without a warrant."

The search challenged on this appeal took place two months later. Taking the facts from the state's evidence, defendant's probation officer, Norman Teman, had acquired information that defendant possessed a sawed-off shotgun,[2] and Teman resolved to conduct a search for it at defendant's residence. Because defendant had been "red-tagged" by the Corrections Division, *i.e.,* administratively designated as potentially dangerous, Teman was accompanied by his unit supervisor, Paul Frank, one other probation officer, and several uniformed Multnomah County Sheriff's deputies whose purpose was to "secure the

---

[1] The state does not contend that defendant was required to submit to a search by virtue of any rule promulgated by the Corrections Division.

[2] Defendant's possession of the shotgun would be a violation of both ORS 166.270(1), prohibiting possession of a firearm by a person convicted of a felony, and 18 USCA (App) § 1202(a)(1) and (5), a similar proscription in the Omnibus Crime Control and Safe Streets Act of 1968.

premises." When the search party arrived at defendant's residence, defendant's wife answered the door and, when Teman identified himself as her husband's probation officer, she admitted the officers. Both Teman and Frank went directly to where defendant was seated. Frank testified:

> "I then advised Mr. Stephens that we were there to execute the search policies [*sic*] that he signed as a condition when he signed his conditions of supervision and I said, 'I would like to start by searching you. Would you please stand up?' He says, 'Yes, sir,' and he stood up and I shook him down for weapons."

The ensuing search of defendant's residence and automobile yielded, in addition to the sawed-off shotgun found in defendant's bedroom dresser drawer, an assortment of clubs and "slugging devices," marijuana seeds and a controlled substance identified as a Quaalude pill. Also, a framed copy of his indictment and a newspaper story of the assault for which defendant was convicted were taken from defendant's living room wall. The trial court understandably concluded that defendant was not benefiting from probation.

The only legal justification asserted for the search and the basis upon which the trial court upheld it was the condition of supervision set out above. Defendant contends that the condition of probation is a nullity because it was imposed by the Corrections Division rather than by the court.

To determine the validity of a condition of probation imposed by a probation officer is not a simple task. The legal effect of such conditions has not been explored in Oregon case law, but we have had occasion to enforce them. The result is a hitherto unacknowledged conflict in our decisions. In *State v. Dupree,* 3 Or App 303, 472 P2d 824 (1970), probation was revoked because the defendant violated conditions of probation imposed by her probation officer that she abstain from drugs and not incur indebtedness. We affirmed the revocation. In *State v. Maag,* 41 Or App

133, 597 P2d 838 (1979), probation was revoked for violation of a condition that the defendant abstain from alcohol. We reversed because it had been imposed by the probation officer rather than the court.

To reconcile the conflict and determine the validity of this search, it is helpful to examine the nature of conditions of probation, the authority of the sentencing court and the authority of the probation officer in light of the statutory scheme of probation as an alternative to incarceration. We begin with our observation in *State v. Culbertson,* 29 Or App 363, 369, 563 P2d 1224 (1977), that "a probationer is a free person possessed of all civil rights except those which are taken away from him for probationary purposes."

The authority of the court to impose conditions of probation which operate to deprive a probationer of liberties is provided by ORS 137.540(1):

"(1) The court shall determine and may at any time modify, the conditions of probation, which may include, as well as any others, that the probationer shall:

(a) Avoid injurious or vicious habits.

(b) Avoid places or persons of disreputable or harmful character.

(c) *Report to the probation officer as directed by the court or probation officer.*

(d) *Permit the probation officer to visit him at his place of abode or elsewhere.*

(e) *Answer all reasonable inquiries of the probation officer.*

(f) Work faithfully at suitable employment.

(g) Remain within a specified area.

(h) Pay his fine, if any, in one or several sums.

(i) Be confined to the county jail for a period not to exceed one year or one-half of the maximum period of confinement that could be imposed for the offense for which the defendant is convicted, whichever is ths lesser.

(j) Make restitution to the victim as provided in ORS 137.106.

"(k)   Support his dependents.

(l)   Remain under the supervision and control of the Corrections Division." (Emphasis supplied).

■ ■      The discretion of a sentencing court to impose these or additional conditions is broad, but it is limited to those conditions which reasonably tend to accomplish purposes of probation, *State v. Martin,* 282 Or 583, 580 P2d 536 (1978), and which conform to statutory restrictions on certain types of conditions, *see State v. Stalheim,* 275 Or 683, 552 P2d 829 (1976). In particular, the right to refuse a search by a probation officer may reasonably be taken away (in the sense that probation may be revoked if the search is refused) by a condition of probation imposed by the court, *State v. Culbertson, supra,* 29 Or App at 372, and we have upheld such a condition in a forgery case based upon underlying drug activity, *State v. Fisher,* 32 Or App 465, 574 P2d 354 (1978).

■      The Supreme Court has held that probation revocation is a matter of broad discretion. The discretion is not necessarily confined to violations of specific conditions of probation. Rather, the issue at a revocation hearing is whether continued probation would effectively serve probationary purposes. As the Supreme Court held in *Barker v. Ireland,* 238 Or 1, 4, 392 P2d 769 (1964).

"* * * It is not necessary to revocation that the person on probation be convicted of a new crime, but only that the trial judge be satisfied that the purposes of probation are not being served, *or* that the terms thereof have been violated. Probation is not a matter of right, but a matter of discretion. Probation is granted, withheld, or revoked in the exercise of the judicial discretion of the trial judge, guided by a balancing of considerations of public safety and rehabilitation of persons convicted of crime." (Citation omitted; emphasis added.)

This court elaborated on that doctrine in *State v. Eckley,* 34 Or App 563, 567, 579 P2d 291 (1978):

[310]

"* * * The initial decision to place defendant on probation was a decision to forego complete denial of liberty by incarceration in favor of a judicially supervised period of restricted liberty in the hope that the purposes of rehabilitation of defendant and the protection of the public can be achieved by the lesser deprivation of liberty. Thus the inquiry at a probation revocation hearing is whether, by virtue of a new crime or noncompliance with conditions of probation or unavailability due to incarceration on other charges *or any other sound reason,* the purposes of probation will best be served by continued probation and deferred incarceration. The determination of whether those purposes are being advanced must often be made in the course of continuing judicial supervision rather than focusing on one act. * * *" (Citations omitted; emphasis added.)

■ ■ The sentencing court is not helpless if it has failed to anticipate in the form of an express condition of probation every possible form of conduct inconsistent with the accomplishment of the objectives of probation. The supervisory responsibility of the court during the probation is concerned with whether rehabilitation and public safety are being served. To confine a court to ministerial use of the conditions as a checklist would be, in effect, to authorize all other behavior regardless of whether it is consistent with probation by forbidding the sentencing court from dealing with it. The judicial role in probation is not so mechanical. If, for example, a prohibition against committing any other crimes is not included as a condition and the probationer goes on a robbery spree, the clear language of the Supreme Court in *Barker v. Ireland* and of this court in *State v. Eckley* would allow revocation because the purposes of probation *i.e.,* rehabilitation and public safety, were not being served.

■ All this speaks to the authority of the *court;* it does not, in itself, define the role of the probation officer. The role of the probation officer is related to that of the court. He or she is the agent whereby a

[311]

judicial order of probation is executed. He translates the generality of the court's order into more specific reality. He can make reasonable adjustments in supervision in light of changing circumstances. His dual function parallels the purposes of probation and is described in *Culbertson:*

> "* * * We look to the probation officer both as a guidance counselor for his probationer and as a surrogate jailer who must protect the public from a person convicted of crime but allowed conditional liberty. * * *" 29 Or App at 369.

■    The authority of a probation officer over a probationer is coextensive with his responsibility. His official authority and powers, as relevant here, are set out in ORS 137.630(2) and (4):

> "The duties of probation officers shall be:
> "* * * * *
>
> "(2)   To receive under supervision any person placed on probation by any court in the jurisdiction area for which such officers are appointed to serve.
> "* * * * *
>
> "(4)   *To give each person under their supervision a statement of the conditions of probation and to instruct him regarding them;* to keep informed concerning the conduct and condition of such persons by visiting, requiring reports and otherwise; to use all suitable methods, not inconsistent with the condition of probation, to aid and encourage such persons and to effect improvement in their conduct and condition." (Emphasis supplied).

■■    This statute, read together with ORS 137.540(1), *supra,* demonstrates that a probation officer's status with respect to his probationer is derivative. It cannot be greater than that of the court which gave the probationer into his charge. This is so because the court is specifically authorized to set conditions of probation; the probation officer is not. He takes his charge as he finds him. In this case, the probationer was given into his charge without the condition which the state tries to utilize here. To permit the probation

officer to set new and different rules would give the probation officer a power not given to courts. *See State v. Stalheim, supra.* This condition of probation was not a true condition, the search conducted pursuant to it was not a lawful search, and a revocation of probation based upon evidence seized during that search is invalid. *State v. Maag, supra.*

Reversed and remanded.