Argued and submitted April 29, affirmed June 29,
reconsideration denied August 13,
petition for review allowed September 9, 1981 (291 Or 514)

# STATE OF OREGON,
*Respondent,*

*v.*

# BETTY SPRAGUE,
*Appellant.*

## (No. DA 194420-8006, CA 19523)

629 P2d 1326

David L. Slader, Portland, argued the cause and filed the brief for appellant.

R. Wayne Torneby, Certified Law Student, Salem, argued the cause for respondent. With him on the brief were David Frohnmayer, Attorney General, John R. McCulloch, Jr., Solicitor General, and William F. Gary, Deputy Solicitor General, Salem.

Before Gillette, Presiding Judge, and Roberts and Young, Judges.

YOUNG, J.

Roberts, J., dissenting opinion.

## YOUNG, J.

Defendant was convicted after trial by jury of the crime of harassment, a misdemeanor. ORS 161.065(1)(a).[1] On appeal, defendant challenges the validity of a curfew as a condition of probation. The court suspended execution of a 60-day sentence, placed defendant on "bench" probation for two years, required 48 hours of community service and ordered her to obey all laws and a 10 p.m. curfew for two years, unless she needs to be out for work-related purposes. Defendant contends the imposition of the curfew condition is "excessive" on the ground that it is not reasonably related to the nature of the offense or to the purpose of rehabilitation. We affirm.

The statutory standard of review as stated in ORS 138.040 is whether the sentence is "cruel, unusual or excessive in light of the nature and background of the offender or the facts and circumstances of the offense * * *."

The harassment charge arose out of an episode occurring around midnight on a Portland street. Defendant's companion was arrested. Defendant interceded in the companion's arrest, and in the process defendant struck a police officer in the face and was arrested.

At sentencing, the trial judge explained his reason for the curfew at some length. Defendant is 20 years old, unemployed and the mother of an 11 month old child. She has no prior record. The court believed that the people defendant was associating with were a bad influence and that defendant would be wise to disassociate herself from them. A motion to reconsider the sentence asserted the impropriety of the curfew. The court repeated its earlier reasons for the condition and emphasized the late hours, defendant's child, her being under 21 years old and her presence in a bar after midnight. Her choice of companions obviously concerned the judge:

"* * * I am convinced, based on the facts of the case and on the facts of her — her age, her situation with the child,

---

[1] ORS 166.065(1)(a) provides:

"A person commits the crime of harassment if, with intent to harass, annoy or alarm another person, he:

"(a) Subjects another to offensive physical contact; or * * *."

her habit of hanging around with the crowd, and then becoming a part of it, little things that I noticed — everybody that testified in her behalf had a tattoo — the same tattoo she had, obviously a member of some sort of group. It just means that she has very strong group ties. Those people, I don't feel, are very good for her to be hanging around, at least after dark. They show an alarming lack of maturity and a propensity for getting into trouble. I don't think that's good for Ms. Sprague."

Defendant mounts a two-pronged attack: (1) the condition violates the statutory standard in that it is not reasonably related to the offense or to the needs of an effective probation; and (2) the condition diminishes a fundamental, constitutionally protected right of a "free citizen to go where she chooses and when she chooses." *See State v. Holm,* 34 Or App 503, 579 P2d 860 (1978).

■    Conditions of probation are reviewable on appeal. ORS 138.040. Our task on review has been facilitated by the trial judge's careful explanation of his observations and reasons for the curfew condition. *See State v. Troupe,* 36 Or App 875, 883, 586 P2d 95 (1978) (Gillette, J., concurring).

■ ■    With respect to defendant's first concern, we view the condition as being reasonably related to the needs of an effective probation. *State v. Hovator,* 37 Or App 557, 562-564, 588 P2d 56 (1978). The trial judge saw this defendant as a young person who had formed unfortunate associations. Those associations, in the late evening hours, had led her into trouble. Clearly, there are a variety of alternatives available to the judge in terms of restructuring the defendant's life to eliminate the potential for trouble. *State v. Asher,* 40 Or App 455, 459, 595 P2d 839 (1979). The judge chose, on balance, a less restrictive alternative than he might have, e.g., jail.

Instead of requiring that defendant entirely disassociate herself from her companions, as he might have done, the judge simply made it impossible for her to associate with them during that period of time when and in those places where, as both the facts of this case and general human experience show, trouble was most likely to occur. If the condition was more stringent in one respect than defendant would have liked — it took away late

evening hours out — it was less stringent in another — she could maintain her friendships at different times and places.

While we might have balanced the same considerations differently, were we imposing the sentence, we cannot say the trial judge was wrong in the way he balanced them. Probation is a very personal matter. Defendant and her friends were seen by the trial judge. He explained what he saw and what he felt was reasonably necessary. While we might do it differently, we could not do it better.

■ ■    Defendant's second contention is that the condition unnecessarily infringes upon a constitutional right. If probationary conditions diminish constitutionally protected rights, those conditions are tested by the necessities for making probation effective, i.e., a reasonable relationship to reformation of the offender or protection of the public. In *State v. Culbertson,* 29 Or App 363, 369, 563 P2d 1224 (1977), the court said:

> "* * * a probationer is a free person possessed of all civil rights except those which are taken away from him for probationary purposes. Probation is a process of imposition of rehabilitative and protective conditions upon a convict in lieu of taking away his liberty by incarceration."

In this case, we view the curfew as a minimal restraint on defendant's liberty and reasonably related to an effective probation.

Affirmed.

**ROBERTS, J.** dissenting.

I disagree that a 10:00 p.m. curfew is a reasonable condition of probation for a 20-year-old woman, with no prior arrest record, who is convicted of harassment. The majority opinion finds the curfew "reasonably related to the needs of an effective probation" without any discussion of the purposes of probation. The proper test to be applied was set forth by the Supreme Court in *State v. Martin,* 282 Or 583, 580 P2d 536 (1978), applying ORS 138.040, which forbids the imposition of a sentence that is cruel, unusual or excessive in light of the nature and background of the offender or the facts and circumstances of the offense, to conditions of probation. The court said:

"[T]he purposes of probation include rehabilitation and the freedom of the individual, as long as these are consistent with public safety * * *. Thus, a condition of probation that is not related to the offense or does not promote public safety or rehabilitation is not permitted under the statute." (Citations omitted.) 282 Or at 588.

It is clear, viewing the court's comments *in toto,* that the trial judge focused on two things: the fact that the defendant had a child, and what he considered to be the unsavory character of her friends. The child was the center of the court's attention:

"THE COURT: * * * The factors that went into that decision were that this did of course occur in the evening hours. It occurs because apparently Ms. Sprague has a habit of hanging around with friends or at parties where she apparently came from according to the testimony. She is under the age of 21 or was at this time. She has a child. This situation, this is a type of a situation that did arise because of a gathering of young people in an area where young people tend to gather after the general evening hours when they probably should not be around the streets.

"The reason I did it — and I've only done this three times in sentencing situations — two were in the case of prostitution convictions where people were always convicted and picked up after hours — Ms. Sprague apparently, she's got a small child. I don't know if the child is in custody or a ward of the court or whatever, but she's got a small child, she should be home prior to 10:00. She should not be out. * * *."

The offense for which defendant was arrested was totally unrelated to her care of the child, which would, of course, more likely be required in the daytime than after 10:00 p.m. The court indicated it did not even know whether the child was living with defendant. While the altercation and defendant's subsequent arrest apparently occurred after 10:00 p.m., the underlying event, a stop for driving while suspended, might occur at any time of day. There was no integral relationship between the offense and the hours during which defendant was barred from the streets. The curfew was thus not, in my mind, in any way related to defendant's offense. Second, the condition was not related to "public safety." There is no showing that

defendant was, or was likely to be, any more a threat to the public after 10:00 p.m. than at any other hour of the day.

Lastly, the curfew was unrelated to defendant's likelihood of rehabilitation. While obviously disapproving of defendant's friends, the court did not forbid defendant from associating with them *before* 10:00 p.m., or in her own home or otherwise indoors after that hour. If it believed her associations were the cause of her behavior, the court might have more logically forbidden defendant from associating with the group or individuals which it felt were a bad influence. The majority's view, that forbidding defendant from *any* public associations after 10:00 p.m. is somehow less stringent than forbidding her to associate at any time with a particular group, is a rather fine point, about which I might also disagree.

There were other options available to the court. It might have forbidden defendant from associating with anyone having the particular tattoo it thought identified them as a group, if it found that these people were in some way contributing to defendant's antisocial behavior. If the court found that defendant's arrest occurred because she was in a place where young people tended to gather and get into trouble, it might have barred her from that place, or from that place at a specific time. With findings that her behavior was alcohol-connected, the court might have barred defendant from premises where alcohol was served. There was no finding that a confrontation in which defendant might feel compelled to come to the aid of a friend was more likely to occur after 10:00 p.m. than before 10:00 p.m. if defendant was free to associate with her friends at their usual gathering spots at other times. The curfew imposed by the court was unrelated to the offense, to public safety or to defendant's rehabilitation, as required by *State v. Martin, supra.* It was therefore "excessive" under the terms of ORS 138.040.

I respectfully dissent.