John William **WHALEY**, Appellant,

v.

**UNITED STATES of America,**
Appellee.

No. 18678.

United States Court of Appeals
Ninth Circuit.

Nov. 12, 1963.

Rock Zaitzow, San Diego, Cal., for appellant.

Francis C. Whelan, U. S. Atty., Thomas R. Sheridan, Asst. U. S. Atty., Chief, Criminal Section, Elmer Enstrom, Jr., and Richard Murphy, Asst. U. S. Attys., Los Angeles, Cal., for appellee.

Before JERTBERG and KOELSCH, Circuit Judges, and BOWEN, District Judge.

BOWEN, District Judge.

Appellant, John William Whaley, was engaged in repossessing for the seller or mortgagee automobiles and boats held by the purchaser or mortgagor in violation of the sale or mortgage contract.

He was charged in a one-count indictment under 18 U.S.C. § 912 with having in his work impersonated an agent of the F.B.I., to which charge he pleaded not guilty, was convicted in a jury trial and was sentenced by the Trial Court to three years imprisonment with execution of sentence suspended and probation for five years ordered.

The Trial Court under 18 U.S.C. § 3231 had, and this Court under 28 U.S.C. §§ 1291 and 1294 has, jurisdiction.

On this appeal, appellant's assigned errors in effect are: (1) That the evidence was insufficient to sustain the verdict; (2) That the Trial Court erred in admitting evidence of prior similar acts which were remote, incompetent and prejudicial; (3) That the Trial Court, erred in giving to the jury erroneous instructions prejudicial to appellant; and (4) That the Trial Court erroneously imposed improperly restrictive conditions of probation upon appellant.

As shown by the record and appellee's brief, to support the charges of the indict-

ment, appellee, United States of America, introduced in substance and effect the following evidence: That on March 13, 1962 appellant came to the door of the residence of witness Reedy in San Diego and asked if Mr. Durbin lived there; that upon being told by Reedy that Mr. Durbin was not there, appellant stated he was "a special investigator"; that Reedy then asked what appellant wanted and whether appellant had come to the Reedy home concerning the automobile of Reedy's father-in-law, John Durbin; that appellant stated he had not come regarding repossession of the car, but asked Reedy if he knew where he could contact Mr. Durbin; that Reedy told appellant he did not know where Mr. Durbin was, but that if he did know he would not tell appellant. Mr. Reedy then left the door, and his wife, Mrs. Reedy, then went to the door, and Mr. Reedy heard her tell the appellant to come in and that she would discuss the matter further, but would not guarantee that she would tell him anything; that the appellant then entered the Reedy home, and all three, the appellant and Mr. and Mrs. Reedy, sat in the front room. When appellant asked Mr. Reedy if he knew it was a federal crime to transport a car across a state line, Mr. Reedy replied that the seller knew that Durbin worked for the federal government; that appellant said that the seller from whom Durbin bought the car "had turned the matter over to us";

That, thereupon, Reedy asked appellant for his credentials; that appellant handed Reedy a leather folder in which he observed a gold badge, the details of which he did not remember, and a card of about 2½″ x 3½″ in which appellant's picture appeared in the lower left hand corner; that the card also had appellant's name, address, height and color of eyes typed in, and at the bottom of the card were the words "Federal Bureau of Investigation"; that the card appellant showed to Reedy on March 13, 1962 was not Exhibit 1, but was similar to it; that appellant asked Reedy if he and his wife knew they could get into trouble by withholding information; that while Reedy had in his hands the card shown him by appellant on March 13, 1962, Reedy told his wife that "the gentleman was from the FBI and that we might as well tell him, because regardless he was going to find out"; that in response to that statement, appellant said nothing; that Mrs. Reedy then took from her husband the folder presented by appellant, looked at it, returned it to appellant and then left the room and obtained a letter which had Mr. Durbin's post office box address on it which she then related to appellant; that when Reedy requested his wife to obtain that information for appellant, Reedy believed appellant was an FBI agent, and Reedy would not have requested or allowed this information to be given to appellant had he not had that belief.

Mrs. Reedy testified that she heard her husband, Mr. Reedy, say appellant was an FBI agent; that she then went and found a letter from her father, Mr. Durbin, having his address on it and gave it to appellant, and that she would not have given appellant that information if she had not believed he was an FBI agent, although she said she did not read the card and did not observe on it the words "Federal Bureau of Investigation", but that she took her husband's word for that. Mrs. Reedy also corroborated much of her husband's testimony.

There was in evidence at the close of appellee's case in chief, and is now in evidence, Exhibit 6 which is a letter dated March 13, 1962, from appellant to the United States National Bank, Eugene, Oregon, reporting to the bank the information obtained by appellant from the Reedys and enclosing an invoice, in evidence as Exhibit 7, for a $15.00 charge by appellant's employer, Pacific Coast Claims Adjusters, against the bank. Also in evidence as Exhibit 8 is a paid $15.00 check bearing the Durbin account name and issued by that bank to and endorsed by said employer of appellant.

FBI agent Feldhaus testified that he talked with appellant on June 27, 1962 when appellant said that he could not remember seeing the Reedys on the previous March 13th and that he did not

remember any case on John Durbin, but that on June 29, 1962, the day of his arrest, appellant said that his review of the file in the meantime received from Los Angeles had refreshed his memory and that he was the one who had made the call on the Reedys on March 13, 1962. Further, witness Feldhaus said in effect that he discussed with appellant the kind of identification he carried.

Also in its case in chief, appellee on the limited question of appellant's intent introduced evidence of two prior transactions of appellant when he repossessed a boat and an automobile, and was said by witnesses to have impersonated law officers.

From the foregoing evidence which was before the Trial Court and jury at the close of and in support of appellee's case in chief, it readily appears that such evidence and reasonable inferences to be drawn therefrom were sufficient to sustain a verdict of guilty of the charge as to all its elements, and that without other evidence if both sides had then rested, appellee would have been entitled to have the case submitted to the jury as against appellant's challenge to the sufficiency of appellee's evidence. The Trial Court did not err in overruling appellant's challenge and in denying his motion to dismiss made upon the close of appellee's case in chief.

Thereupon, appellant proceeded with his defense, and himself took the witness stand, denied that he represented himself as from the FBI, testified that for four or five years he had been a private investigator or repossessor and that prior to that he had been a police officer in Los Angeles. Other defense witnesses testified as to the credentials normally carried by private investigators and repossessors and as to appellant's good character. Appellant did not testify nor does he now contend that he was an FBI agent. The evidence does not show that he was. Instead, it does show he was a private investigator and repossessor. There was then competent evidence from which the jury could properly infer that appellant was not an FBI agent and find that he falsely represented himself to be one.

■ The evidence supports a finding of the jury that, by means of his FBI impersonation, appellant obtained from the Reedys information concerning the whereabouts of John Durbin, which was of value to him, since as further appears from the record, he was paid $9.00 for his services in the Durbin car repossession matter.

■ Appellant's further objection to the introduction of evidence of appellant's two prior similar law officer impersonations on the alleged grounds that such evidence was irrelevant, immaterial and remote was carefully considered and overruled by the Trial Court, and we think rightly so. Appellee had the burden of proving criminal intent, and evidence of similar acts occurring reasonably near in time and reflecting intent similar to that charged in this case was clearly relevant and material as throwing light upon and explaining the intent with which the appellant did the things charged against him in the indictment.

Furthermore, we think the Trial Court properly ruled that appellant's two prior acts of impersonation in question were not too remote in time (1) since the first one occurred on August 30, 1961, only about 6½ months before the offense alleged in this case, when the evidence tended to show that appellant succeeded in repossessing a boat after falsely representing himself to be "from the Federal Bureau of Investigation" and "from the FBI", and (2) since the second prior similar act occurred on January 11, 1962, only 2 months before the offense alleged in this case, when the evidence tended to show appellant repossessed a Thunderbird automobile after falsely representing himself as "National City Police".

We reject appellant's contention of error in the Trial Court's instruction to the jury on criminal intent as that instruction was a correct and clear expression of the law applicable to the subject of, and correctly explaining, criminal intent, and clearly distinguishing it from motive.

■ We disagree with appellant's contention that the Trial Court's probation condition prohibiting appellant from engaging in the repossession business is unreasonable and improper. The occupational activity prohibited in the probation condition is the one in which appellant was engaged when he committed the offense of which he stands convicted. The probation condition certainly related to the crime with which he was charged. Naturally, probation is upon condition that a law violator not repeat his offense. A reasonable if not the best way to prevent recurrent similar offenses is to withdraw from appellant the privilege of engaging in the repossession business where the temptation to impersonate law officers is most likely to occur. The Trial Court committed no error respecting the probation conditions.

■ There can be no question in this case but that, both at the close of appellee's case in chief and at the close of all the evidence, there was substantial evidence to support a verdict of guilty; and in that connection the Government is entitled to have the Court take the view of the evidence most favorable to the Government. The Supreme Court has held that

"It is not for us to weigh the evidence or to determine the credibility of witnesses. The verdict of a jury must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it. (citing)". Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680, 704.

Likewise, this Court has ruled

"While there is some conflict in the testimony, we must view the evidence in the light most favorable to the Government, including the reasonable inferences to be drawn therefrom. If, viewed in this light, there is substantial evidence to support the jury's verdict, it must be sustained". Bolen v. United States, 9 Cir., 1962, 303 F.2d 870, 874.

In this case, finding no error in the Trial Court's action, we affirm.