**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Valerie TERRIGNO,**
**Defendant–Appellant.**

**No. 86–5124.**

United States Court of Appeals,
Ninth Circuit.

Submitted Nov. 2, 1987.*

Decided Feb. 2, 1988.

---

* The panel finds this case appropriate for submission without oral argument pursuant to Ninth Circuit Rule 34–4 and Fed.R.App.P. 34(a).

Laurie L. Levenson, Los Angeles, Cal., for plaintiff-appellee.

David F. Blaisdell, Orange, Cal., for defendant-appellant.

Before TANG, WIGGINS and KOZINSKI, Circuit Judges.

TANG, Circuit Judge:

Terrigno appeals her conviction after a jury trial for embezzlement and conversion of public funds in violation of 18 U.S.C. § 641. She contends the district court abused its discretion in denying her motion to strike surplusage from the indictment and in imposing a condition on her probation. We affirm.

Terrigno was the Executive Director of Crossroads Counseling, a federally funded organization that counseled area residents seeking employment and provided emergency assistance (e.g. rent payments and grocery store gift certificates) for the needy. Terrigno was Director from late 1982 until Crossroads closed in October 1984, and she was responsible for all administrative functions, including disbursement of funds. Crossroads was a joint recipient of a grant of some $41,000 in 1983 and 1984; the funds were authorized by Congress and distributed through the Federal Emergency Management Agency.

The indictment alleges that Terrigno embezzled these federal funds by: (1) issuing checks drawn on Crossroads' account to her personal friends who were not eligible recipients for their and her own personal use; (2) issuing Crossroads' checks to pay her own rent and to pay for repairs of her personal automobile; (3) using Crossroads' funds to purchase clothing for herself and her friends; and (4) using Crossroads' funds to purchase $5,000 worth of Safeway gift certificates which she then used herself or gave to her friends rather than to the eligible indigents for whom the assistance was intended. A federal grand jury indicted Terrigno on fourteen counts of embezzlement and conversion but the indictment was subsequently amended to reflect twelve counts. After a jury trial the jury returned a guilty verdict on all twelve counts.

The trial court sentenced Terrigno on one count to sixty days in a community treatment center and suspended imposition of sentencing on the remaining counts and placed her on probation for five years. One condition of her probation was:

That the defendant, during the period of probation, not receive any financial remuneration or any other thing of value from any speaking engagements, written publications, movies, or any other media coverage dealing with her involvement in this offense.

I. Surplusage

Denial of a motion to strike surplusage is reviewed for an abuse of discretion. *United States v. Poore*, 594 F.2d 39, 41 (4th Cir.1979). The purpose of a motion to strike under Fed.R.Crim.P. 7(d) is to protect a defendant against "prejudicial or inflammatory allegations that are neither relevant nor material to the charges." *United States v. Ramirez*, 710 F.2d 535, 544–45 (9th Cir.1983).

Terrigno objects to the inclusion of four allegations in the indictment: (1) the repeated statement that the embezzled funds were destined for the "poor and homeless"; (2) the reiteration that she issued checks "willfully"; (3) the assertion that she prepared a list for the United Way of indigents to whom she purportedly distributed the Safeway gift certificates in an effort to "lull and deceive" the United Way; and (4) the description of "Macho" as a men's clothing store.

It is clear that these facts, while they may be somewhat prejudicial, are all relevant and material to the charge of embezzlement because the Government had to prove that Terrigno had an intent to convert money belonging to an agency of the United States. That the money was intended for the poor and homeless but was diverted to her personal uses is a necessary element of proof of embezzlement and conversion; that checks were issued willfully and the list of food certificate recipients was prepared to deceive the United Way is essential to prove the element of intent under 18 U.S.C. § 641; and that "Macho" was identified as a men's clothing store is neither prejudicial nor inflammatory and is relevant to the charges because it clarifies the identity of the payee of one of the misused checks drawn on Crossroads' ac-

count. The trial court did not abuse its discretion in denying the motion to strike.

## II. Probation Condition

■ A sentencing judge has broad discretion in setting probation conditions. *United States v. Lowe,* 654 F.2d 562, 567 (9th Cir.1981); *United States v. Consuelo-Gonzalez,* 521 F.2d 259, 264 (9th Cir.1975) (en banc). Exercise of this discretion is reviewed carefully where probation conditions restrict fundamental rights, but such restriction is permissible. *Lowe,* 654 F.2d at 567.

■ The test for validity of probation conditions, even where "preferred" rights are affected, is whether the conditions are primarily designed to meet the ends of rehabilitation and protection of the public. *Id.; Consuelo-Gonzalez,* 521 F.2d at 265 n. 14. This test is applied in a two-step process; first, this court must determine whether the sentencing judge imposed the conditions for permissible purposes, and then it must determine whether the conditions are reasonably related to the purposes. *Higdon v. United States,* 627 F.2d 893, 897 (9th Cir.1980). The mere fact that a condition restricts a probationer's freedom to perform otherwise lawful activities is not dispositive of the reasonableness of the condition. *Id.* at 898. But if conditions are drawn so broadly that they unnecessarily restrict otherwise lawful activities they are impermissible. *Id.*

■ Terrigno contends that the probation condition violates her first amendment rights. Trial courts frequently impose restrictions on speech when a criminal conviction is for crimes committed during the course of expressive activity, *e.g.,* nuclear protest, *Lowe,* 654 F.2d at 567–68; exportation of arms to the Irish Republican Army, *Malone v. United States,* 502 F.2d 554 (9th Cir.1974), *cert. denied,* 419 U.S. 1124, 95 S.Ct. 809, 42 L.Ed.2d 824 (1975); committing an assault during an antiwar demonstration, *In re Mannino,* 14 Cal.App. 3d 953, 92 Cal.Rptr. 880 (1971); or violating election laws, *United States v. Tonry,* 605 F.2d 144 (5th Cir.1979). Such restrictions are narrowly drawn to protect the public from a situation that might lead to a repetition of the same crime.

In this case, the trial court has not restricted Terrigno's right to speak, it has merely forbidden her to receive money for speaking about her crime during the five-year term of her probation. The trial court simply wanted to assure that Terrigno would not profit from her crime by exploiting her story in the media. The court's concern with this possibility is reasonable in that there had already been considerable media interest in the trial because of Terrigno's prominence as a lesbian and as the first mayor of West Hollywood.

We think this probation condition has a reasonable nexus with the twin goals of probation, rehabilitation and protection of the public. We have indicated before that the standard for determining the reasonable relationship between probation conditions and the purposes of probation is necessarily very flexible precisely because "of our uncertainty about how rehabilitation is accomplished." *Consuelo-Gonzalez,* 521 F.2d at 264. We certainly cannot say it is unreasonable to think that the rehabilitation of a person convicted of embezzlement and conversion of public funds will be more effective if she is reminded in a very practical sense that "crime does not pay."

■ In considering the second purpose of probation it is undisputable that the public is directly protected by another of the conditions of Terrigno's probation, that she not obtain any employment in a position in which she would be responsible for the administration of public funds. We think there is likewise a reasonable nexus between the public welfare and preventing her from further exploitation of her previous position of trust by profiting from telling her story. At the same time we see no danger that the public will be denied the benefits of full exposure of the facts of her crime and conviction nor that Terrigno will be denied her first amendment rights of expression because the trial court's condition only forbids Terrigno's making a profit, it does not restrict expression at all, and

the restriction obtains only during her probation term.

The judgment of the district court is AFFIRMED.