418 Mass. 175 (1994)
635 N.E.2d 1175
CITY OF BOSTON
vs.
BACK BAY CULTURAL ASSOCIATION, INC., & others.[1]
Supreme Judicial Court of Massachusetts, Suffolk.
April 5, 1994.
July 6, 1994.
Present: LIACOS, C.J., NOLAN, LYNCH, & GREANEY, JJ.
John P. Ward (David Duncan with him) for Back Bay Cultural Association, Inc.
Donna M. Mueller, Assistant Corporation Counsel (Dianne E. Taylor, Assistant Corporation Counsel, with her) for the plaintiff.
LYNCH, J.
This case raises the issue whether Ordinances, Title 14 § 430A (1979) (ordinance) of the city of Boston (city), restricting the hours of operation of establishments holding entertainment licenses, violates the First Amendment to the United States Constitution. A Superior Court judge determined that the ordinance did not violate the First Amendment. The defendant Back Bay Cultural Association, Inc. (Back Bay), appealed and we transferred the case here on our own motion. We reverse.
1. Background. We summarize the facts from the parties' statement of agreed facts. On May 31, 1979, Loft Twenty-one Association, Inc. (The Loft),[2] filed a complaint for declaratory and injunctive relief seeking to have the ordinance declared unconstitutional. On July 16, 1979, a Superior Court judge issued a preliminary injunction enjoining the city from enforcing the ordinance against The Loft. The ordinance provided:
"No person shall between the hours of Two O'Clock, ante meridian, and Six O'Clock, ante meridian, in any *177 club, theater, restaurant, retail store, or in any other place of business or place of public assembly, offer, provide, perform, or set-up, or suffer another to offer, provide, perform, or set-up, any entertainment or music, live, recorded, or mechanical, including but not limited to entertainment or music provided by means of a radio, television, tape recorder, phonograph or projector, except that the showing of a motion picture commenced prior to Twelve-thirty O'Clock, ante meridian may continue uninterrupted until its conclusion provided that the same is concluded prior to Three O'Clock, ante meridian."[3]
In granting the preliminary injunction, the judge noted that there is "a substantial question as to whether the ordinance is sufficiently narrowly tailored to advance the legitimate governmental interests involved without unduly infringing upon both the right to engage in and to be exposed to expressive activity protected by the first amendment."
On September 12, 1985, the city and The Loft entered into an agreement for judgment (1985 agreement). Under the terms of the 1985 agreement, judgment entered for The Loft on its request that the city be enjoined from initiating prosecution or enforcing the ordinance against The Loft, its agents, servants, employees, or assigns. The parties waived the right to appeal. The Loft ceased operating in October of 1985. In March, 1992, The Loft, in conjunction with Back Bay, resumed operations.[4] On May 17, 1993, the mayor's office of consumer affairs and licensing issued a conditional entertainment license to The Loft and Back Bay. The licensing office granted the entertainment license to 2 A.M. and denied *178 the portion of the application requesting an entertainment license beyond 2 A.M.
The city brought the present action to prevent the defendants from offering unlicensed entertainment after 2 A.M. Both parties filed motions for summary judgment. In addition, the city, pursuant to Mass. R. Civ. P. 60 (b), 365 Mass. 828 (1974), filed a motion seeking to vacate the 1985 agreement. The defendants claimed that the city was bound by the terms of the 1985 agreement, that the ordinance was overly broad thus violating the First Amendment, and that the ordinance was invalid because it was repugnant to G.L.c. 140, § 183A (1992 ed.).[5] The judge allowed the city's motion for summary judgment, ruling that the 1985 agreement was invalid, that the ordinance was not repugnant to § 183A, and that there was no First Amendment violation. In addition to their original arguments, Back Bay raises for the first time on appeal that the ordinance violates art. 16 of the Declaration of Rights, as amended by art. 77 of the Amendments to the Massachusetts Constitution.[6] We conclude that there was no error in the judge's determination that the 1985 agreement was void and that the ordinance is not repugnant to § 183A. We conclude further, however, that the ordinance violates the First Amendment.
2. First Amendment. The Supreme Court has recognized that "in a public forum the government may impose reasonable restrictions on the time, place, or manner of protected speech, provided the restrictions `are justified without reference *179 to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information.'" Ward v. Rock Against Racism, 491 U.S. 781, 791 (1989), quoting Clark v. Community for Creative Non-Violence, 468 U.S. 288, 293 (1984). "Entertainment, as well as political and ideological speech, is protected; motion pictures, programs broadcast by radio and television, and live entertainment, such as musical and dramatic works, fall within the First Amendment guarantee." Schad v. Mount Ephraim, 452 U.S. 61, 65 (1981). The city, while recognizing that musical entertainment is a protected form of communication under the First Amendment, see Ward v. Rock Against Racism, supra at 790, posits that this ordinance is a valid time restriction on protected speech.
a. Content. "Government regulation of expressive activity is content neutral so long as it is `justified without reference to the content of the regulated speech.'" Id. at 791, quoting Clark v. Community for Creative Non-Violence, supra at 293. The judge ruled that the ordinance was content neutral. We agree.
We note at the outset of our analysis that the "principal inquiry in determining content neutrality, in speech cases generally and in time, place, or manner cases in particular, is whether the government has adopted a regulation of speech because of disagreement with the message it conveys." Id. at 791, citing Clark v. Community for Creative Non-Violence, supra at 295. "The government's purpose is the controlling consideration. A regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others." Ward, supra, citing Renton v. Playtime Theatres, Inc., 475 U.S. 41, 47-48 (1986) (Renton). The fundamental principle underlying the requirement of content neutrality is that "government may not grant the use of a forum to people whose views it finds acceptable, but deny use to those wishing to express less favored or more controversial views." Renton, supra at 48-49, quoting Police Dep't of Chicago v. Mosley, *180 408 U.S. 92, 95-96 (1972). The judge ruled that the ordinance was content neutral because the city's purpose in creating the ordinance, i.e., maintaining quiet streets at certain hours, was completely unrelated to the content of any form of expression.[7] We agree.
The parties recognize that the city "ha[s] a substantial interest in protecting its citizens from unwelcome noise." Ward v. Rock Against Racism, supra at 796, quoting City Council of Los Angeles v. Taxpayers for Vincent, 466 U.S. 789, 806 (1984). The city's principal justification for the ordinance is to preserve peace and tranquility in the city during the early morning hours. We conclude that the ordinance is not content based. In order to reduce noise in the early morning hours, the city has placed a time restriction on certain forms of entertainment. This time restriction applies regardless of the message presented by the various media of entertainment. The ordinance does not prevent any form of entertainment from expressing a view or delivering a particular message. The ordinance merely restricts the time in which such a view or message may be expressed.
Back Bay argues that, because the ordinance excludes motion pictures, it favors certain forms of expression; therefore it is not content neutral. According to Back Bay, "a prohibition against the use of sound trucks emitting `loud and raucous' noise in residential neighborhoods is permissible if it applies equally to music, political speech, and advertising. See generally Kovacs v. Cooper, [336 U.S. 77 (1949)]." Cincinnati v. Discovery Network, Inc., 113 S.Ct. 1505, 1516 (1993) (Discovery). Therefore, the time limitation is acceptable only if it applies to all forms of expression. Back Bay misreads the teaching of Discovery. In Discovery., supra at 1508, the Supreme Court dealt with a municipal code which prohibited the distribution of commercial handbills through newsracks on public property. The municipal code defined "commercial handbills" as any written matter advertising *181 items for sale, or directing attention to particular businesses or activities to promote their sales or advertising events for which admission is charged. Id. at 1508 & n. 2. In Discovery, Cincinnati contended that the regulation of commercial handbills was content neutral because it served Cincinnati's interests of safety and esthetics which were unrelated to the content of the handbills. Id. at 1516. In rejecting that argument, the Supreme Court reasoned that, regardless of Cincinnati's intent, it had enacted a sweeping ban of newsracks distributing commercial handbills but not newsracks distributing newspapers. Consequently, the Court determined that the regulation was a content based restriction on protected speech because whether a particular newsrack was subject to the ban rested entirely on the content of the publication it held. Id. at 1516-1517. Although Cincinnati's purpose of promoting cleaner streets was not aimed at the message of commercial handbills, the practical effect of the ordinance was to ban commercial handbills because of their content.
Unlike Discovery, the motion picture exception of the ordinance relies on the difference in the manner in which entertainment is presented rather than the content of the entertainment. According to the city, this exception is justified because, unlike other forms of entertainment, patrons of motion pictures arrive prior to the start and remain until the conclusion of the picture; thus motion pictures do not infringe on the city's interest in reducing noise during the early morning hours. We conclude that the motion picture exception of the ordinance is also content neutral. All motion pictures, whatever their subject matter, may be shown provided they begin before 12:30 A.M. and end by 3 A.M. Other forms of entertainment, whatever their subject matter, cannot take place after 2 A.M. The distinction is based on the legitimate legislative determination that motion pictures create less undesirable noise in the early morning hours than other forms *182 of entertainment. This justification does not implicate the content of protected speech.[8]
b. Narrowly tailored to serve a substantial governmental interest. Government "ha[s] a substantial interest in protecting its citizens from unwelcome noise." Ward v. Rock Against Racism, supra at 796, quoting City Council of Los Angeles v. Taxpayers for Vincent, 466 U.S. 789, 806 (1984). However, an ordinance restricting protected speech in the interests of eliminating unwelcome noise must be narrowly tailored. Id. at 798. The "essence of narrow tailoring" is that "the guideline ... focuses on the source of the evils the city seeks to eliminate... and eliminates them without at the same time banning or significantly restricting a substantial quantity of speech that does not create the same evils." Ward v. Rock Against Racism, supra at 799 n. 7. "So long as the means chosen are not substantially broader than necessary to achieve the government's interest, however, the regulation will not be invalid simply because a court concludes that the government's interest could be adequately served by some less-speech-restrictive alternative." Id. at 800. Thus, our focus is whether the ordinance restricting the time and manner in which entertainment may be presented is "substantially broader" then necessary to achieve the city's purpose of reduced noise in the early morning hours.
*183 According to the city, the noise that it seeks to eliminate emanates from buildings providing entertainment; patrons gathering, entering or leaving; motor vehicles arriving or departing; and patrons traveling city streets. At oral argument, the city conceded that the time restriction would apply to a "piano player" in a hotel, a harpist in a function room, a "rock band" at a concert hall, as well as a television in the lobby of a hotel. The parties' statement of agreed facts makes reference to the 1979 case where the judge found:
"The ordinance, however, is clearly too broad to serve this limited purpose because the prohibition is not limited to excessively noisy entertainment; rather, the ordinance would prohibit not only the types of entertainment that, because of their nature, might reasonably be thought to pose a direct threat to the tranquility of the surrounding area, but also many forms of entertainment such as poetry readings, mime performances or even lectures that could not possibly by themselves pose a threat to the peace and quiet of the neighborhood."
Thus, not all forms of entertainment affected by the ordinance, including several types conceded by the city to be affected, create the type of noise the city legitimately seeks to eliminate. Therefore, the ordinance is not narrowly tailored because it adversely affects entertainment that does not produce the unwanted secondary effects. Renton, supra at 52.
3. General Laws c. 140, § 183A. We agree with the judge that there is no conflict between the ordinance and § 183A. Section 183A provides in pertinent part that "licensing authorities may place conditions upon the license." There is nothing in § 183A that suggests that, before a local authority may impose conditions on a license, or for the purposes of protecting public health, safety, or order, a hearing is required.
We recognize that municipalities may not adopt ordinances that are inconsistent with State law. American Motorcyclist Ass'n v. Park Comm'n of Brockton, 412 Mass. *184 753, 756 (1992). Rather than precluding local action, however, § 183A invites local authorities to preserve and to protect the public health, safety, and order by placing conditions on licenses and promulgating rules and regulations pertaining to such licenses. We conclude that the ordinance is not repugnant to § 183A.
4. 1985 agreement for judgment. The defendants argue that the city is bound by the terms of the parties' 1985 agreement providing that the city would not enforce the ordinance against The Loft. We do not agree. We agree with the judge that, by exempting The Loft from the terms of the ordinance, the city exceeded its authority. It was not within the city's authority to exempt The Loft from the requirements of the ordinance. "Officers of governmental agencies have authority to bind their governmental bodies only to the extent conferred by the controlling statute." White Constr. Co. v. Commonwealth, 11 Mass. App. Ct. 640, 647 (1981), S.C., 385 Mass. 1005 (1982). The ordinance does not authorize the city to make exceptions to its enforcement. Thus, the parties' agreement was void from its inception.
Judgment reversed.
NOTES
[1] The complaint listed the defendants as follows: "BACK BAY CULTURAL ASSOCIATION, INC.; KENYATTA VON MULLER, individually and in her capacity as an officer and representative of the Back Bay Cultural Association, Inc.; LOFT 21 ASSOCIATION, INC.; 21 STANHOPE STREET REALTY TRUST; JOSEPH D'ONOFRIO, individually and in his capacities as an officer and representative of Loft 21 Association, Inc. and as a trustee of 21 Stanhope Street Realty Trust; and KIRSTEN AF KLINTEBERG."
[2] Loft Twenty-one Association, Inc. (The Loft), was a nonprofit corporation operating a private club open to "members only" from 1 to 5 A.M. The Loft played recorded music but did not serve alcoholic beverages. In its complaint, The Loft alleged that its primary purpose was "to provide a place of meeting and social gathering for persons whose jobs require them to work at night, especially persons working in hotels and in the entertainment and service industries."
[3] The parties agree that, in 1985, § 430A was renumbered and is now codified at City of Boston Code § 17-13.6 (1985).
[4] The judge stated that The Loft "ceased operations between October 1988 and March 1992." The parties' statement of agreed facts stated that The Loft ceased operations in October, 1985. The date The Loft ceased operations is not essential to our decision.
[5] General Laws c. 140, § 183A (1992 ed.), provides, in part: "No ... person owning, managing, or controlling any club, restaurant or other establishment required to be licensed ... and no person owning, managing, or controlling any concert, dance, exhibition, cabaret or public show of any description to be conducted on any premises required to be licensed ... shall, as a part of its usual business, offer to view, set up, set on foot, maintain or carry on a concert, dance exhibition, cabaret or public show of any description, unless and until a license therefor has been issued by the licensing authorities."
[6] Back Bay's art. 16 contention was not raised in the Superior Court; therefore it is not properly before us. LaPointe v. License Bd. of Worcester, 389 Mass. 454, 457 (1983).
[7] Back Bay concedes that the goal of peace and quiet in the city is completely legitimate.
[8] Because we conclude that the ordinance is content neutral, we reject Back Bay's further contention that the motion picture exception constitutes a violation of the equal protection clause of the Fourteenth Amendment to the United States Constitution. In Police Dep't of Chicago v. Mosley, 408 U.S. 92, 95, 102 (1972), the Supreme Court invalidated, based on equal protection grounds, a city ordinance restricting all picketing, except peaceful labor picketing, near schools. The Mosley Court emphasized that the difficulty with the ordinance was that it defined permissible picketing in terms of the message or content of the picketing. Id. at 95. Therefore, the ordinance did not provide "all points of view an equal opportunity to be heard" and did not constitute a content neutral regulation of the time, place, and manner of protected speech. Id. at 96, 99. In the present case, because the city's ordinance does not restrict entertainment on the basis of its content or message, it does not cause a violation based on equal protection.