COMMONWEALTH vs. KATHERINE A. POWER.

Suffolk. December 6, 1994. - May 18, 1995.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, & LYNCH, JJ.

*Practice, Criminal*, Sentence, Probation. *Constitutional Law*, Freedom of
speech and press, Sentence. *Due Process of Law*, Sentence.

Discussion of a judge's authority to impose conditions of probation in a
    criminal matter and the nature of enforceable conditions with respect to
    the goals of sentencing and probation. [413-415]
A special condition of probation prohibiting a convicted felon from profit-
    ing financially from speech about her crime or her experience as a fugi-
    tive was reasonably related to a legitimate purpose of sentencing and
    did not unconstitutionally burden the defendant's First Amendment
    rights. [415-419]
There was no merit to a criminal defendant's claim that an imposed condi-
    tion of probation unconstitutionally placed the defendant in jeopardy
    for the actions of third persons or that the condition was unconstitution-
    ally vague in violation of her due process rights. [420-421]


INDICTMENTS found and returned in the Superior Court on
October 1, 1970.

The cases were heard by *Robert W. Banks*, J.

The Supreme Judicial Court granted an application for di-
rect appellate review.

*Joseph L. Kociubes* (*Mark W. Batten, Peter J. Mancusi &
Sarah R. Wunsch* with him) for the defendant.

*John P. Zanini*, Assistant District Attorney (*Katherine E.
McMahon*, Assistant District Attorney, with him) for the
Commonwealth.

*Abbe Smith*, for Criminal Justice Institute, amicus curiae,
submitted a brief.

*Melvin Spaeth, Darryl W. Jackson, Laura J. Hines, Ruth
Ann M. Nicastri & Charles W. Scarborough*, of the District
of Columbia, & *Robert S. Mueller, III, & Peter A. Spaeth*,

for The National Victim Center, amicus curiae, submitted a brief.

*Wayne C. Paquette,* amicus curiae, submitted a brief.

LIACOS, C.J. The defendant pleaded guilty to two indictments charging her with armed robbery and to so much of a murder indictment as charged manslaughter. The defendant now seeks to appeal from the portion of her sentence which places her on probation for twenty years with a special condition that she not profit from the sale of her story to the news media.[1] The defendant requests that we vacate the special condition on the grounds (1) that it violates her right to freedom of expression under the First Amendment to the United States Constitution[2] since it imposes an unconstitutional prior restraint on content-based speech, (2) that it unconstitutionally places the defendant in jeopardy for the actions of

---

[1] The Commonwealth contests the defendant's right of appeal on the grounds that (1) she voluntarily consented to the now contested condition of probation and (2) that she failed to seek recourse from the trial judge under Mass. R. Crim. P. 29, 378 Mass. 899 (1979) (motion to revise or revoke) which, the Commonwealth says, has not been acted on by the judge. We note, however, that the docket of the Superior Court reveals that such a motion was filed on December 1, 1993, together with an affidavit in support and was denied without hearing on December 17, 1993. Additionally, we take the view that the defendant's motion for reconsideration, also denied, was, in substance, a motion under Mass. R. Crim. P. 30, 378 Mass. 900 (1979). See *Ahern* v. *Warner,* 16 Mass. App. Ct. 223, 225 (1983). See also *Stewart, petitioner,* 411 Mass. 566, 569 (1992). The matter having been fully briefed and being of public interest, we proceed to consider the merits. *Wellesley College* v. *Attorney Gen.,* 313 Mass. 722, 731 (1943). We limit our review to the appropriate record before us, namely, the transcripts of the plea and sentencing hearings and the contract of probation.

[2] The defendant asserts that art. 16 of the Declaration of Rights, as amended by art. 77 of the Amendments to the Massachusetts Constitution, provides greater protection than does the First Amendment. While we have held that to be true in certain circumstances, e.g., *Commonwealth* v. *Sees,* 374 Mass. 532 (1977), the claim of a violation of the Declaration of Rights was not raised before the trial judge; hence, it is not properly before us. See *Boston* v. *Back Bay Cultural Ass'n,* 418 Mass. 175, 178 n.6 (1994). Additionally, the applicability of art. 16 is not adequately briefed and hence is waived. Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 921 (1975). See *Commonwealth* v. *Cook,* 419 Mass. 192, 194 n.1 (1994). Thus, we consider the issues argued solely under the First Amendment.

third persons, and (3) that it is unconstitutionally vague in violation of her due process rights. We granted the defendant's application for direct appellate review.

The facts giving rise to this appeal can be stated briefly. On September 23, 1970, five individuals, including the defendant, robbed the State Street Bank and Trust Company at the intersection of Western Avenue and Everett Street in the Brighton section of Boston. While three of her accomplices entered the bank, the defendant sat several blocks away in the "switch car," ready to drive the three from the scene once the robbery was completed. The fifth accomplice, William Gilday, sat in an automobile across the street from the bank as a lookout. Gilday was armed with a fully loaded Thompson submachine gun.

The silent alarms inside the bank were triggered several minutes after the robbers entered the bank and Boston Police Officers Walter Schroeder and Frank Callahan responded to the scene. The robbers had left the bank and headed for the "switch car" before the officers arrived, but Gilday maintained his position as lookout. When Officer Schroeder attempted to enter the front door of the bank he was shot in the back by Gilday. Officer Schroeder succumbed to his wounds and died the following day.

Three of the robbers were arrested shortly after the crimes, and the fourth was apprehended in 1975. The defendant, however, managed to evade law enforcement authorities and eventually settled in Oregon under an assumed name.

On September 15, 1993, in the glare of national news media attention, the defendant surrendered to Massachusetts authorities after twenty-three years as a fugitive from justice. Represented by counsel, the defendant pleaded guilty to two indictments charging armed robbery and to so much of a murder indictment charging manslaughter. The pleas were accepted after a full and complete colloquy by the judge with the defendant and her counsel. The prosecution recommended a sentence of from eight to twelve years. The judge accepted the recommendation with respect to the manslaugh-

ter charge and one of the armed robbery charges, ordering the defendant to serve the terms concurrently. He exceeded the recommendation, however, with respect to the second armed robbery charge and sentenced the defendant to twenty years probation, to begin immediately. The written probation contract includes the following special condition:

> "You, your assignees and your representatives acting on your authority are prohibited from directly or indirectly engaging in any profit or benefit generating activity relating to the publication of facts or circumstances pertaining to your involvement in the criminal acts for which you stand convicted (including contracting with any person, firm, corporation, partnership, association or other legal entity with respect to the commission and/or reenactment of your crimes, by way of a movie, book, magazine article, tape recording, phonograph record, radio or television presentations, live entertainment of any kind, or from the expression of your thoughts, feelings, opinions or emotions regarding such crime). This prohibition includes those events undertaken and experienced by you while avoiding apprehension from the authorities. Any action taken by you whether by way of execution of power of attorney, creation of corporate entities or like action to avoid compliance with this condition of probation will be considered a violation of probation conditions."

The judge gave the defendant the opportunity to withdraw her guilty pleas as the sentence exceeded the recommendation of the prosecution. She declined. After consultation with counsel, she agreed to the special condition in open court and, shortly thereafter, affixed her signature to the written contract of probation.

We begin with the recognition that judges are permitted great latitude in sentencing as long as the sentence imposed is within the limits provided by the statute under which the defendant is convicted. *Commonwealth* v. *Goodwin*, 414

Mass. 88, 92 (1993). *Commonwealth* v. *Burke,* 392 Mass. 688, 694 (1984). The defendant was placed on probation for her second conviction of armed robbery, an offense punishable by life imprisonment. G. L. c. 265, § 17 (1992 ed.). Thus, the sentence did not exceed the limits of the applicable statute. In addition, G. L. c. 276, § 87 (1992 ed.), which permits the imposition of probation, states that a trial court "may place on probation . . . any person before it charged with an offense or a crime for such time and *upon such conditions as it deems proper* . . . after a finding or verdict of guilty" (emphasis supplied). G. L. c. 276, § 87. The conditions of probation "may include, *but shall not be limited to,* participation by said person in specified rehabilitative programs or performance by said person of specified community service work" (emphasis supplied). G. L. c. 276, § 87A (1992 ed.).

It has been held generally that a condition of probation is enforceable, even if it affects a "preferred" right, where the condition is primarily designed to meet, i.e., "reasonably related" to, the goals of sentencing and of probation. See, e.g., *United States* v. *Clark,* 918 F.2d 843, 847-848 (9th Cir. 1990); *United States* v. *Tolla,* 781 F.2d 29, 32-34 (2d Cir. 1986), and cases cited; *United States* v. *Lowe,* 654 F.2d 562, 567 (9th Cir. 1981); *State* v. *Graham,* 33 Conn. App. 432, 446-448 (1994); *State* v. *McGill,* 114 N.C. App. 479, 483-484 (1994); *Commonwealth* v. *Koren,* 435 Pa. Super. 499, 506 (1994); *State* v. *Matheny,* 884 S.W.2d 480, 483 (Tenn. Crim. App. 1994); *State* v. *Mace,* 154 Vt. 430, 436 (1990); *State* v. *Miller,* 175 Wis. 2d 204, 208 (1993); *Leyba* v. *State,* 882 P.2d 863, 865 (Wyo. 1994). See also *Cepulonis* v. *Commonwealth,* 384 Mass. 495, 499 (1981).

In general, when imposing a sentence, the judge should consider several goals: punishment, deterrence, protection of the public, and rehabilitation. *Commonwealth* v. *Goodwin, supra* at 92. The primary goals of a probationary sentence are rehabilitation of the probationer and protection of the public. *Commonwealth* v. *LaFrance,* 402 Mass. 789, 795 (1988), quoting *State* v. *Griffin,* 131 Wis. 2d 41, 65 (1986) (Abrahamson, J., dissenting). *United States* v. *Tolla, supra*

at 33. Other recognized goals of probation include punishment, deterrence, and retribution. *United States* v. *Tonry*, 605 F.2d 144, 148 (5th Cir. 1979) (condition of probation upheld as long as "reasonably related to rehabilitation of the probationer, protection of the public against other offenses during its term, deterrence of future misconduct by the probationer or general deterrence of others, condign punishment, or some combination of these objectives"). "A probation condition is not necessarily invalid simply because it affects a probationer's ability to exercise constitutionally protected rights." *Id.* at 150. Conditions of probation that affect First Amendment rights have been upheld. *Tonry, supra* at 151, and cases cited. See *Tolla, supra* at 33-34; *Clark, supra.* Courts recognize the reasonableness of imposing probation as an alternative to other forms of punishment, e.g., incarceration, in appropriate cases. "Indeed, it is a rare sentence, whether or not jail is a part of it, that does not in fact involve all of these objectives—punishment, deterrence, protection of the public, rehabilitation and restitution." *United States* v. *Tolla, supra* at 35. With these general principles in mind, we address each of the defendant's arguments.

The defendant argues that the special condition quoted amounts to a prior restraint on content-based speech in violation of her First Amendment rights. We disagree.

We agree that, because the condition places a financial disincentive on the defendant based on the content of her speech, it does implicate her First Amendment rights. *Simon & Schuster, Inc.* v. *New York Crime Victims Bd.*, 502 U.S. 105, 115 (1991). However, the condition allows the defendant to speak on any subject, including her crimes, whenever, and through whatever medium she desires. Her arguments to the contrary are unpersuasive. The condition merely prohibits the defendant from profiting financially from speech about her crime or her experience as a fugitive. In *Simon & Schuster*, the Supreme Court held that a financial burden on content-based speech was unconstitutional when applied by a statute which, although it served a compelling State interest,

was overly broad.[3] The holding of the *Simon & Schuster* case is not applicable here. That case involved a statute of general applicability implicating content-based free speech rights and was thus subject to strict scrutiny requiring a compelling State interest and narrow tailoring to meet that interest. The New York statute in issue was struck down because it was overly broad, i.e., it applied not only to criminals convicted in a court of law but also to those accused of a crime and those who admitted to committing a crime.

The defendant in the case at bar is a convicted felon and the special condition is part of her probationary sentence. Generally, "probationer[s do not] have a right to be free from conditions that severely restrain [their] freedom of action." *United States* v. *Tonry, supra* at 148. As long as the

---

[3]*Simon & Schuster, Inc.* v. *New York Crime Victims Bd.*, 502 U.S. 105 (1991), involved a challenge to New York's "Son of Sam" law, which required that anyone contracting with a person accused or convicted of a crime with respect to his telling the story of his crime in the media, or their thoughts and feelings about their crime, submit a copy of the contract to the Crime Victims Board (board) and pay over to the board any monies which would otherwise be owed to the person accused or convicted or his representative. The statute broadly defined "person convicted of a crime" as including "any person convicted of a crime in this state either by entry of a plea of guilty or by conviction after trial *and any person who has voluntarily and intelligently admitted the commission of a crime for which such person is not prosecuted*" (emphasis added). *Id.* at 110. N.Y. Exec. Law § 632-a(10)(b) (McKinney 1982 & Supp. 1991). The Court noted that the statute was presumptively unconstitutional as it placed a financial burden on speakers because of the content of their speech. *Simon & Schuster, Inc., supra* at 115. Thus, the Court examined whether the statute served a compelling State interest and whether the statute was narrowly tailored to meet that interest so as to comport with the First Amendment. *Id.* at 118.

Although it concluded that preventing criminals from profiting from speaking about their crimes was a compelling State interest, the Court determined that the statute could not stand because it was not narrowly drawn so as to meet the interest without being overinclusive. *Id.* at 121. The statute's broad definition of "person convicted of a crime" enabled the board to escrow the income of any author who admitted to having committed a crime, whether or not the author was ever actually accused or convicted. *Id.* The Court noted that the statute's effect would be felt indefinitely and by many people. Thus, the statute was held unconstitutionally broad.

condition meets the "reasonably related" test, it is not per se unconstitutional even if it restricts a probationer's fundamental rights.[4] *United States* v. *Bolinger*, 940 F.2d 478, 480 (9th Cir. 1991). *United States* v. *Peete*, 919 F.2d 1168, 1181 (6th Cir. 1990). Cf. *Commonwealth* v. *LaFrance*, 402 Mass. 789 (1988) (holding unconstitutional condition of probation which allowed for warrantless searches).

A special condition of probation is not subject to the same rigorous First Amendment scrutiny that is employed against a statute of general applicability. The condition in the instant case applies only to the defendant and is reasonably related to a valid probation purpose. It serves what we believe, and what several other courts and commentators agree,[5] are valuable punitive and deterrent purposes beyond those that would be served through the imposition of a prison sentence alone. In these circumstances, such a condition is permissible.[6]

---

[4]This court has held that such restrictions are not without limits. *Commonwealth* v. *LaFrance*, 402 Mass. 789 (1988). In *LaFrance*, a special condition of the defendant's probation required that the defendant submit to searches of her person, her possessions, and any place where she may be, with or without a search warrant, on the request of a probation officer, for the term of her probation. We held that, under both the Fourth Amendment to the United States Constitution and art. 14 of the Massachusetts Declaration of Rights, a warrantless search of the probationer required at least a "reasonable suspicion that a search might produce evidence of wrongdoing." *Id.* at 790. Moreover, we held that there were some instances where art. 14 would require a search warrant to conduct such searches.

[5]See, e.g., *Simon & Schuster, Inc.* v. *New York Crime Victims Bd.*, *supra* at 119 ("The State . . . has an undisputed compelling interest in ensuring that criminals do not profit from their crimes"); *United States* v. *Waxman*, 638 F. Supp. 1245, 1246 (E.D. Pa. 1986); Filcik, Signs of the Times: Scarlet Letter Probation Conditions, 37 Wash. U.J. Urb. & Contemp. L. 291 (1990); Note, The Modern Day Scarlet Letter: A Critical Analysis of Modern Probation Conditions, 1989 Duke L.J. 1357.

[6]Many other conditions placing burdens on otherwise constitutionally protected First Amendment or other rights have been upheld when applied to probationers. See, e.g., *United States* v. *Romero*, 676 F.2d 406 (9th Cir. 1982) (probationer convicted of a drug offense prohibited from associating with others convicted of drug offenses); *Malone* v. *United States*, 502 F.2d 554 (9th Cir. 1974), cert. denied, 419 U.S. 1124 (1975) (probationer convicted of gun exportation for Irish Republican Army prohibited from, inter alia, visiting Irish pubs); *Whaley* v. *United States*, 324 F.2d 356 (9th Cir.

In our view, the condition imposed was reasonably related to a legitimate purpose of criminal sentencing. This defendant, and other defendants similarly situated, are deterred from seeking to profit directly or indirectly from criminality, the moral foundations of our society are reinforced by the condition, the defendant (and others like her) are given to understand that the crime committed and her successful, albeit illegal, fugitive status of over twenty-three years will bring neither reward, benefit, nor profit, and her rehabilitation and understanding of the depth of her criminality are enhanced.

A condition similar to the one at issue here was upheld in *United States* v. *Terrigno*, 838 F.2d 371 (9th Cir. 1988). In *Terrigno*, the defendant was convicted of embezzling and conversion of public funds from a federally funded counselling center of which she was the executive director. Part of Terrigno's sentence included probation, a condition of which was "[t]hat the defendant, during the period of probation, not receive any financial renumeration or any other thing of value from any speaking engagements, written publications, movies, or any other media coverage dealing with her involvement in this offense." *Id.* at 373. Terrigno claimed on appeal that the probation condition violated her First Amendment rights.

---

1963), cert. denied, 376 U.S. 911 (1967) (probationer convicted of impersonating agent of Federal Bureau of Investigation while repossessing vehicle prohibited from working as a repossessor); *United States* v. *Tonry*, 605 F.2d 144 (5th Cir. 1979) (defendant convicted of violating Federal Election Campaign Act, inter alia, prohibited from running for office or participating in political activity during probation); *Markley* v. *State*, 507 So. 2d 1043 (Ala. Crim. App. 1987) (probationer convicted of burglary and criminal mischief at abortion clinic required to stay 500 yards away from the clinic); *Goldschmitt* v. *State*, 490 So. 2d 123 (Fla. Dist. Ct. App. 1986) (probationer convicted of drunk driving required to place bumper sticker on automobile identifying his conviction); *State* v. *Morgan*, 389 So. 2d 364 (La. 1980) (probationer convicted of prostitution banned from French Quarter in New Orleans); *State* v. *Harrington*, 78 N.C. App. 39 (1985) (probationer convicted of drunk driving could not enter any premises licensed to sell alcoholic beverages); *State* v. *Sprague*, 52 Or. App. 1063 (1981) (probationer convicted of harassment required to maintain 10 P.M. curfew).

The Court of Appeals for the Ninth Circuit concluded that the condition did not restrict Terrigno's right to speak but merely prohibited her from receiving money for speaking about her crimes during the term of her probation. *Id.* at 374. "The trial court simply wanted to assure that Terrigno would not profit from her crime by exploiting her story in the media. The court's concern with this possibility is reasonable in that there had already been considerable media interest in the trial . . . ." *Id.* The court stated that the condition was reasonably related to Terrigno's rehabilitation because it reminds her "in a very practical sense that 'crime does not pay.' " *Id.* "We think there is likewise a reasonable nexus between the public welfare and preventing her from . . . profiting from telling her story. At the same time we see no danger that the public will be denied the benefits of full exposure of the facts of her crime and conviction nor that Terrigno will be denied her [F]irst [A]mendment rights of expression because the trial court's condition only forbids Terrigno's making a profit, it does not restrict expression at all, and the restriction obtains only during her probation term."[7] *Id.* at 374-375.

---

[7] A condition of probation similar to the defendant's was also employed in *United States* v. *Waxman*, 638 F. Supp. 1245 (E.D. Pa. 1986). In *Waxman*, the defendant pleaded guilty to receipt of stolen property and interstate transportation. The defendant was placed on probation with the condition that he not profit financially or participate in a project from which a friend or his family might profit, based on the sale of "any TV or radio scenario." *Id.* at 1246. The defendant sought a modification of the condition on the grounds that it deprived him of his First and Fifth Amendment rights and that the condition served purely punitive purposes. The court concluded that the condition did not violate the defendant's First or Fifth Amendment rights because it did not prohibit him from speaking but merely profiting from that speech. The court agreed that the defendant may have been deprived of a property interest, "but it was not without due process of law. Convicted felons frequently are deprived of property (and liberty) interests." *Id.*

The court also concluded that the condition was reasonably related to the goals of probation in that the condition was not meant to punish the defendant but served a rehabilitative, and deterrent, effect. "It is in his own interest for Dr. Waxman to learn that society will neither tolerate criminal behavior nor permit the criminal to profit from it when he can be prevented from doing so. Second, it is also in the interest of other members

The defendant's second argument concerns the portion of the special condition that extends the prohibition on profit to "[her] assignees and [her] representatives acting on [her] authority." She claims that this portion of the condition impermissibly puts her in jeopardy for the actions of third parties. She also claims that the condition burdens persons other than herself even though they were not convicted of any crime. Finally, she claims that this portion of the condition is overinclusive because it lacks clear boundaries and is discriminatory because it permits some third parties to profit from telling Power's story and not others. There is no merit to these claims.

Assuming, without deciding, that the defendant has standing to raise the claims of third parties, we think it is clear what conduct the condition prohibits regarding actions by third parties. The defendant's apparent confusion is merely a result of her strained reading of the condition and speculation as to its repercussions. See *State* v. *Miller*, 175 Wis. 2d 204, 212-213 (1993). One need look no further than the well-established definitions of "assignee" and "representative" to see that the condition restricts profit-generating activity only by those third persons acting on the defendant's behalf and on her authority (representatives) and by persons to whom she bestows the authority to pursue and enforce rights which would otherwise be hers alone (assignees).[8] The condition does not restrict any third party from telling the

---

of society to learn by example that not only may they have to pay the piper but that they cannot expect the piper to pay them for their memoirs." *Id.*

[8]Black's Law Dictionary 118 (6th ed. 1990), defines an "[a]ssignee" as "[a] person to whom an assignment is made; grantee," and defines "[a]ssignment" as "[t]he act of transferring to another all or part of one's property, interest, or rights." *Id.* at 119.

A "[r]epresentative" is "[a] person or thing that represents, or stands for, a number or class of persons or things, or that in some way corresponds to, stands for, replaces, or is equivalent to, another person or thing . . . [o]ne who represents others or another in a special capacity, as an agent, and term is interchangeable with 'agent.' " *Id.* at 1302.

defendant's story, provided he or she is not acting on the defendant's authority as her representative or as her assignee.

Finally, the defendant argues that the condition is unconstitutionally vague.[9] She claims that it is unclear what behavior the condition prohibits and that the condition improperly leaves decisions to probation officers about when she can and cannot speak. We agree that the defendant is entitled to know what conduct is forbidden by her probation condition. The constitutional rule against vague laws applies as equally to probation conditions as it does to legislative enactments. *Griffin* v. *Wisconsin*, 483 U.S. 868, 875-876 n.3 (1987). However, we believe the condition is adequately clear so as to inform the defendant of what conduct is prohibited. Of course, we are necessarily "[c]ondemned to the use of words [and thus] we can never expect mathematical certainty from our language." *Grayned* v. *Rockford*, 408 U.S. 104, 110 (1972). In light of this fact, we are of opinion that the probation condition is as clear as possible. We have stated, in discussing vagueness in regard to statutes, that "if the language which is challenged conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices, it is constitutionally adequate." *Commonwealth* v. *Adams*, 389 Mass. 265, 270 (1983), quoting *Commonwealth* v. *Jarrett*, 359 Mass. 491, 496-497 (1971). That much can be said in the instant case.

The special condition of the defendant's probation is affirmed.

*So ordered.*

---

[9]The defendant makes no argument that the condition violates due process in that it is disproportionate to the offense. See *Commonwealth* v. *Sanchez*, 405 Mass. 369, 379-380 (1989), and cases cited.