NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case.  A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-1088

COMMONWEALTH

vs.

MICHAEL BUCKLEY.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Convicted by a Superior Court jury of assault and battery, G. L. c. 265, § 13A, the defendant appeals.  He argues that in sentencing the judge improperly considered as an aggravating factor that during trial the defendant defaulted and remained at large for almost six months, and failed to consider as a mitigating factor the defendant's status as a caretaker of his girlfriend's children.  Based on the judge's comments at sentencing, we conclude that the defendant's sentence was lawful and therefore affirm.

Background.  We summarize the facts based on the evidence before the jury.  Just after 4 P.M. on May 18, 2022, surveillance video near Massachusetts Avenue and Melnea Cass

Boulevard in Boston captured the victim walking down the street holding a bag in his hand. At the time, the victim was dependent on opioids. The victim encountered some acquaintances and sold drugs to two of them. Then the defendant, wearing a blue shirt, came up behind the victim and hit him on the head. When the victim tried to walk away, the defendant blocked his path. Joseph Donahue, wearing a red shirt, grabbed the victim from behind and held a knife to his neck, which the victim grabbed with his hand. A man in a white shirt who had been standing nearby came over and helped the defendant push the victim to the ground. The assailants took the victim's wallet, his fanny pack, and his money. Bleeding from his hand, the victim walked to Boston Medical Center where he was treated.

The defendant testified that in May 2022 he was addicted to benzodiazepine. On May 18, he went to the area of Massachusetts Avenue and negotiated the purchase of twelve pills from a man in black, giving the man sixty dollars. The defendant then followed the man, who engaged in a transaction with the victim and handed the pills to the defendant. When the defendant realized there were only seven pills, he demanded his money back from the victim and hit the victim on the head.

After hearing that evidence, the jury retired to deliberate. The next morning, September 21, 2023, the defendant did not appear at trial and a warrant issued for his arrest. In

2

absentia, the jury convicted the defendant of assault and battery.[1]

Almost six months later, on March 15, 2024, the warrant was recalled.  At sentencing, the prosecutor asked for the defendant to be sentenced to two and one-half years in the house of correction, based on the facts of the crime and the defendant's prior record, which included State prison sentences for manslaughter and armed robbery.  Defense counsel asked for a straight probation sentence, and filed a motion requesting that in sentencing the judge consider that the defendant was the primary caretaker of children.  See G. L. c. 279, § 6B.  The motion was supported by affidavits of the defendant and his girlfriend stating that on weekdays while the girlfriend was at work, the defendant was the "primary caretaker" for her four and eight year old children, caring for the younger child all day and for the older one before and after school.  The judge stated, "given his record, and given the facts as I recall them to be, I don't think probation is appropriate . . . .  And again, I want to make it clear . . . the fact that he fled has nothing to do with my sentence.  That is a different charge."  The judge sentenced the defendant to two and one-half years in

_____

[1] The jury acquitted the defendant of armed robbery and assault and battery by means of a dangerous weapon.

3

the house of correction, with two years to serve and the balance suspended for two years on conditions that he stay away from the victim, stay away from the area of Massachusetts Avenue and Melnea Cass Boulevard, and undergo random drug testing.  The defendant filed a timely notice of appeal.

Discussion.  On appeal, the defendant argues that his sentence was unlawful because the judge improperly considered his default as an aggravating factor and improperly failed to consider his caretaker status as a mitigating factor.

Our review of the defendant's sentence is limited.[2]  We consider only "whether the [defendant]'s sentence was unconstitutional or otherwise unlawful, and such questions of law are subject to de novo review" (quotation and citation omitted).  Commonwealth v. Rajiv R., 495 Mass. 646, 659 (2025).  The defendant does not argue that his sentence was unconstitutional, see id. at 661-662, and so we consider only

_____

[2] We note that the defendant has not filed in the Superior Court a motion to revise and revoke his sentence, Mass. R. Crim. P. 29 (a) (2), as appearing in 489 Mass. 1530 (2022), or for release from unlawful restraint, Mass. R. Crim. P. 30 (a), as appearing in 435 Mass. 1501 (2001).  He has not filed a motion for stay of his sentence asserting that he is the primary caretaker for dependent children.  Cf. Kiago-Wilson v. Commonwealth, 483 Mass. 1010, 1010-1011 (2019) (defendant asserting primary caretaker status sought stay of sentence in Superior Court, but not Appeals Court).  Nor has the defendant appealed his sentence to the Appellate Division of the Superior Court, G. L. c. 278, §§ 28A-28C.  See Commonwealth v. Coleman, 390 Mass. 797, 804 (1984).

4

whether it was unlawful. This court is not empowered to modify or adjust a lawful criminal sentence. Rather, we would vacate a trial court's sentencing order and remand only if a sentence is unlawful, see Commonwealth v. Woodward, 427 Mass. 659, 683 (1998), or in the rare circumstance "where there is reason to think a sentencing judge may have considered uncharged conduct for an improper purpose." Commonwealth v. Suarez, 95 Mass. App. Ct. 562, 577 (2019).

The defendant argues that his sentence was unlawful because the judge improperly considered that he fled during trial, which he argues was "an untried offense." We are not persuaded. During sentencing, the judge said on three separate occasions that she was not considering the defendant's flight. Based on the judge's repeated statements that she was not considering the defendant's flight, we cannot reasonably conclude that she in fact did so. See Commonwealth v. Martin, 98 Mass. App. Ct. 727, 731 (2020) (at sentencing, judge said "I want the record to be crystal clear" that he was not considering conduct for which defendant was acquitted).

In support of his argument that the judge did in fact consider his flight, the defendant points to a comment by the judge in response to defense counsel's sentencing argument. After counsel argued that the defendant was "sorry" and had "already lost so much as a result of this case," the judge

5

replied, "please don't insult me by having him apologize. It's been months. . . . If he'd showed up a couple days later, an apology maybe, but it's been a really long time, so I think we're well past that." We do not read the judge's comment that counsel should not have the defendant apologize as demonstrating that the judge considered his flight in sentencing, particularly given the facts of the crime and the defendant's prior record. See Commonwealth v. Bland, 48 Mass. App. Ct. 666, 668-669 (2000) (judge's comment that, in addition to facts of crime and defendant's record, he considered "demographics" of elderly victims, did not invalidate sentence). Contrast Commonwealth v. Coleman, 390 Mass. 797, 810 (1984) (judge's questioning of defendant at sentencing about truthfulness of testimony showed that sentence was effectively for uncharged crime of perjury); Suarez, 95 Mass. App. Ct. at 576 (judge's comments at sentencing implied she sentenced defendant for rape, of which he was not convicted, rather than assault with intent to rape).

The defendant further argues that the judge refused to consider mitigating information that he was the primary caretaker for his girlfriend's young children.[3] The judge said

_____

[3] The defendant does not argue that the judge was required to issue written findings about his status as a primary caretaker of a dependent child and alternatives to incarceration. See G. L. c. 279, § 6B (b). We do not consider that issue.

6

that in sentencing she would not consider "anything that happened after he took off," either in mitigation or aggravation. We conclude that it was within the judge's discretion to consider in sentencing only the facts adduced at trial and not subsequent events. Cf. Commonwealth v. Power, 420 Mass. 410, 418 (1995), cert. denied, 516 U.S. 1042 (1996) (on convictions for manslaughter and armed robbery, probation condition prohibiting defendant from profiting from account of her twenty-three years as fugitive was relevant to rehabilitation).

The caretaker sentencing statute provides that a sentencing judge "may . . . consider the defendant's status as a primary caretaker of a dependent child before imposing a sentence." G. L. c. 279, § 6B (b). Whether the defendant's motion and supporting affidavits demonstrated that he met the statutory definition of a primary caretaker of a dependent child is a question of law that we review de novo. See Rajiv R., 495 Mass. at 659. The statute defines a primary caretaker of a dependent child as "a parent with whom a child has a primary residence." G. L. c. 279, § 6B (a). The statute does not define the word "parent." We conclude that the defendant did not demonstrate, for the purposes of the caretaker sentencing statute, that he was the children's parent. The defendant averred that he, his girlfriend, and the children "live together as a family, and I

7

am a father figure to the [children]." The defendant did not assert that he had any legal relationship to the children that conferred on him the obligation to support them or rights to custody of or visitation with them.[4] His averment that he considered himself "a father figure" to them did not suffice to show that he was their "parent" within the meaning of G. L. c. 279, § 6B (a).

Judgment affirmed.

By the Court (Grant,
Brennan & Smyth, JJ.[5]),

Clerk

Entered: November 19, 2025.

---

[4] The parent-child disqualification statute, G. L. c. 233, § 20, Fourth, defines a parent as "the biological or adoptive parent, stepparent, legal guardian or other person who has the right to act in loco parentis for the child." See Rajiv R., 495 Mass. at 651. Without deciding whether that definition would apply to the caretaker sentencing statute, we note that the defendant did not establish that he met it.

[5] The panelists are listed in order of seniority.